11 ARMSTRONG, Judge.
The defendants, Martin Benson, Martin Benson Trust and Robert Darling, appeal from a judgment denying their motion to dissolve a preliminary injunction or, alternatively, to require that the plaintiff, the City of New Orleans (the “City”) post security for the injunction.
Martin Benson and the Martin Benson Trust are the owners of a five-story building located at 700 Baronne Street in the city of New Orleans. According to the defendants, the building is used as “a Gay oriented bath *1198 house under the name ‘Midtowne Spa’.” In January 1980, days after firefighters answered a New Year’s Day fire alarm, a city fire inspector cited the manager of the bathhouse, defendant Robert Darling, with twenty (20) separate alleged violations of the New Orleans Fire Prevention Code and Building Code of the City of New Orleans. A separate proceeding is pending in New Orleans Municipal Court as to Mr. Darling and those alleged codal violations.
On January 26, 1995, the City filed a petition for writ of injunction and application for temporary restraining order in the Civil District Court for the Parish of Orleans seeking to enjoin the defendants from operating the spa. The request for TRO was denied. On February 8, 1995, following a hearing, the court issued a preliminary injunction enjoining the operation of the top three floors of the spa. The court dispensed with the need for the City to furnish security under authority of La.R.S. 13:4581.
Subsequently, the defendants filed a motion to dissolve the preliminary injunction on the grounds that the building was in compliance with fire and building codes and the City 12filed a rule for contempt, charging that the defendants were continuing to operate the spa in violation of the February 3, 1995 court order. The City also sought another TRO and injunctive relief completely closing down the spa. On May 26, 1995, a duty judge granted a TRO shutting down the business completely. On June 29, 1995 the trial court judge dissolved the TRO, leaving in effect the previously issued preliminary injunction enjoining use of the top three floors of the business. The court, at that time, also declared the defendants to be in contempt of court and ordered them to pay a fine of $500.00. However the fine was suspended.
On June 28, the defendants filed a motion to dissolve the preliminary injunction or, in the alternative, to require the City to furnish security. On June 29, 1995 the trial court denied the motion to dissolve the preliminary injunction, as well as the motion to require security. On its own motion the court reversed its previous finding of contempt and denied the rule for contempt. It is from this judgment that the defendants appeal.[1]

Subject Matter Jurisdiction:

The defendants first argue that the trial court had no jurisdiction over this case because it involves the violation of a municipal ordinance and the City has invoked the jurisdiction of its Municipal Court by charging defendant Robert Darling with violating a municipal ordinance. The defendants cite the case of Olan Mills, Inc. of Tenn. v. City of Bogalusa, 225 La. 648, 73 So.2d 791 (1954), and progeny, for the proposition that the New Orleans Municipal Court has exclusive jurisdiction.
In Olan Mills, the manager of a business was arrested under an affidavit filed in the City Court of Bogalusa, Louisiana, charging him with violating a city ordinance relating to the operation of the business. On the day following the arrest the employer filed suit in state district court to enjoin enforcement of the ordinance on the grounds that it was unconstitutional. The district court found the ordinance in question unconstitutional, null and void, and ordered a preliminary injunction issued enjoining the City of Boga-lusa from enforcing the ordinance. On appeal the Louisiana Supreme Court stated:
^Indubitably, the assailed ordinance is a regulatory measure, enforceable by a criminal penalty, in the adoption of which the municipality was attempting an exercise of its police power. This being true and in the absence of the extraordinary circumstances hereinafter discussed the district, proceeding as a court of equity, is without right to interfere with the enforcement of ■it, the general rule being that courts of equity, having jurisdiction in civil matters only, have no authority to prevent by injunction the enforcement of the criminal laws of the state or the penal ordinance of a municipality.
Olan Mills, 73 So.2d at 793.
The court went on to hold that the enforcement of the ordinance could be en *1199 joined only if three conditions concurred, to wit: (1) a clear invasion of a property right; (2) threatened irreparable injury; and (3) the manifest unconstitutionality of the ordinance. Id. Olan Mills and all of the cases cited by the defendants stand for the principle that the enforcement of a penal law or ordinance should not be enjoined absent the concurrence of the three conditions set forth above. In Knights of Columbus, Chapter No. 2409 v. Louisiana Dept. of Public Safety & Corrections, 548 So.2d 936 (La.1989), cited by the defendants, the Louisiana Supreme Court reiterated its holding in Olan Mills, stating: “The general rule is well settled. As in most jurisdictions, Louisiana courts hesitate to interfere via injunction with the legitimate enforcement of criminal laws.” (Citation omitted).
Defendants submit that principles enunciated in Olan Mills should apply to this case to prevent a civil court, as “a court of equity, having jurisdiction in civil matters only,” from enjoining a business from operating in violation of fire safety codes. We decline to adopt such a holding.
Municipalities, such as the City of New Orleans, through their “police powers,” have the authority to impose laws and regulations which are reasonably related to protection or promotion of a public good, such as health, safety or welfare. See City of Shreveport v. Restivo, 491 So.2d 377 (La.1986). These powers encompass the enactment and enforcement of fire and building code regulations designed to protect the public from injury to life, limb and property caused by fire. The City was fulfilling its duties to the public at large when it sought to enjoin the operation of the Midtowne Spa as long as it failed to correct the deficiencies constituting the fire safety code violations.
l/The City took the action after the fire department answered a call and found a smoldering mattress. According to the defendants, the top three floors of the spa contain “all of the rental rooms.” In his report the District Fire Chief stated that the top three floors of the spa contained “literally dozens of cubicles approximately 8 feet long by 6 feet wide, all with foam mattresses” and located on each side of “narrow hallways.” The cubicles were made of particle board. The report states that, while a sprinkler system was in place on these floors, the tops of those cubicles were covered by slats and things were stored on top of them. Therefore, because the slats and stored items were between the sprinkler system and the particle board cubicles, and mattresses, the District Fire Chief felt that the sprinkler system was rendered “ineffective if not entirely useless.” The bottom floors (more correctly, the first floor and the “mezzanine”), contained hot tubs, a sauna, a steam room and lockers and “changing room.” In issuing the preliminary injunction, the court found that the spa provided sleeping facilities on one of the upper floors and also provided entertainment on the premises. The City made these allegations — the defendants denied them. The City also alleged that the cubicles were rented out during Mardi Gras for sleeping quarters. The court further found that the condition of the upper three floors of the building, when considered in light of the uses to which the defendants put them, constituted “a serious and significant risk to patrons and people on the premises.”
Had the City, with knowledge of the deficiencies, failed to enjoin the operation of the top three floors of the spa containing the cubicles and fire hazards, and a fire occurred in the spa with loss of life and property, the City would no doubt have faced numerous lawsuits alleging liability for allowing the spa to continue to operate with the deficiencies. In the Statement of the Case portion of their brief on appeal, the defendants seek to portray the City’s actions, or at least the actions of fire department personnel, as motivated, in part, by a bias against homosexual citizens. Ironically, over twenty-two years ago the City of New Orleans suffered a major catastrophe when a bar catering to homosexuals, the “Upstairs Lounge,” caught on fire and tragically resulted in great loss of life and personal injury. At least fourteen lawsuits were filed against agencies of the state and local government, including the City of New Orleans Rand the New Orleans Fire *1200 Department.[2] The plaintiffs in those cases argued that hazardous conditions in the building caused the fire and prevented escape after it was discovered because public officials failed to make the inspections required by law. Fire department officials in the instant case acted to enjoin the operation of the Midtowne Spa to prevent another such tragic occurrence.
We find no merit in the defendants’ argument that the holdings of Olan Mills and progeny deprive the civil district court of subject matter jurisdiction over a suit by the City to enjoin the operation of the Midtowne Spa.

Double Jeopardy—Cruel, Excessive and Unusual Punishment:

Defendants claim that the City’s suit for injunction, following the charging of the manager of the Midtowne Spa, defendant Robert Darling, with municipal code violations in Municipal Court, amounts to double jeopardy. In State v. Johnson, 93-2557 (La.App. 4th Cir. 2/11/94), 632 So.2d 817, writ granted, 94-0595 (La. 9/23/94), 642 So.2d 1302, this court discussed the double jeopardy issue raised by the defendants, citing U.S. v. Halper, 490 U.S. 435, 109 S.Ct. 1892, 104 L.Ed.2d 487 (1989). In Halper, the court stated:
Where a defendant previously has sustained a criminal penalty and the civil penalty sought in a subsequent proceeding bears no rational relation to the goal of compensating the Government for its loss, but rather appears to qualify as “punishment” in the plain meaning of the word, then the defendant is entitled to an accounting of the Government’s damages and costs to determine if the penalty sought in fact constitutes a second punishment [double jeopardy].”
109 S.Ct. at 1902.
In the instant ease, Robert Darling, the manager of the spa who is charged individually with violating a municipal ordinance, has not had a criminal adjudication. More importantly, the City is not seeking to exact a civil penalty from the Midtowne Spa or its owners. As previously stated, in its civil action the City is simply fulfilling its duty to protect the public from fire hazards. While the injunction barring use of the top three floors of the Midtowne Spa may incidentally affect the revenue generating capacity of the business, it cannot be said that the UCity is seeking to punish the defendants by enjoining them from endangering the public. The injunctive relief is remedial, not punitive.
Also, it is entirely within the power of the defendants to bring the building up to code and have the injunction dissolved. In an affidavit filed by the defendants on February 1, 1995, a contractor attested that he had “initiated the process to obtain permits to perform the work necessary to comply with alleged building code violations existing in [the Midtowne Spa] and it appear[ed] as though it [would] require at least forty-five (45) to sixty (60) days to commence the repairs.” As of the date of oral argument in this appeal, one hundred eighty (180) days had elapsed since that affidavit was filed by defendants.
The defendants also argue that the injunctive relief obtained by the City constitutes cruel, excessive and unusual punishment in violation of the Eighth Amendment to U.S. Constitution, citing Austin v. U.S., - U.S. -, 113 S.Ct. 2801, 125 L.Ed.2d 488 (1993). In Austin, the petitioner pled guilty to one count of possessing cocaine with intent to distribute in violation of South Dakota state law. Subsequently, the United States filed an in rem action in federal court seeking forfeiture of the petitioner’s mobile home and auto body shop pursuant to federal statute. Austin narrowly dealt with the issue of whether a civil forfeiture for violation of a criminal statute was punitive, and thus subject to the limitations of the Eighth Amendment’s Excessive Fines Clause or, rather, was remedial.
The instant case is not a forfeiture proceeding. We have already determined that the injunctive relief sought and obtained by the City was not punishment for allegedly *1201 violating a municipal ordinance, but was rather remedial in nature, serving to protect the public from the danger of fire. Accordingly, we find no merit to the argument that the injunctive relief constitutes cruel, excessive or unusual punishment.

Security for Injunctive Relief:

The defendants claim that a statute dispensing with the need for the State to post security before obtaining injunctive relief is unconstitutional. La.C.C.P. art. 3610 states:
A temporary restraining order or preliminary injunction shall not issue unless the applicant furnishes security in the amount fixed by the court, except \-/where security is dispensed with by law. The security shall indemnify the person wrongfully restrained or enjoined for the payment of costs incurred and damages sustained.
(Emphasis added.)
La.R.S. 13:4581 states:
State, parish, and municipal boards or commissions exercising public power and functions, sheriffs, sheriffs’ departments, and law enforcement districts, and the Patient’s Compensation Fund, or any other officer or employee thereof, shall not be required to furnish any appeal bond or any other bond whatsoever in any judicial proceedings instituted by or brought against them, that arise from activities within the scope and course of their duties and employment.
Official- Revision Comment (b) to La. C.C.P. art. 3610 provides in pertinent part:
R.S. 13:4581 exempts state, parish, and municipal boards or commissions from furnishing bond in connection with judicial proceedings. It is broad enough to cover all instances in which the state is a litigant.
Thus, there is little question but that the legislature intended that R.S. 13:4581 operate to dispense with the security requirement contained in La.C.C.P. art. 3610 in a ease such as this.
La. Const, art. XII, § 10(A) states:
Neither the state, a state agency, nor a political subdivision shall be immune from suit and liability in contract or for injury to person or property.
The defendants argue that R.S. 13:4581 is unconstitutional as violative of La. Const, art. XII, § 10(A) which did away with sovereign immunity in Louisiana. We disagree. The City is enjoying no immunity from suit or liability by the operation of R.S. 13:4581. In addition to the prohibition of sovereign immunity in La. Const, art. XII, § 10(A), subsection (C) provides:
The legislature shall provide a procedure for suits against the state, a state agency, or a political subdivision. It shall provide for the effect of a judgment, but no public property or public funds shall be subject to seizure. No judgment' against the state, a state agency, or a political subdivision shall be exigible, payable, or paid except from funds appropriated therefor by the legislature or by the political subdivision against which judgment is rendered.
The Louisiana State Constitution specifically provides that the legislature shall provide procedures for suits against the state and political subdivisions. This constitutional mandate | gencompasses the power to dispense with the need for the state or its political subdivisions to furnish security for injunctive relief, which is in the nature of a “procedural” matter. Compare, Carter v. City of New Orleans, 327 So.2d 488 (La.App. 4th Cir.1976) (statute prohibiting jury trials against the state or other public bodies relates to “procedure” within the meaning of La. Const. art. XII, § 10(C)). Therefore, we find no merit to this argument.
For the foregoing reasons, we affirm the judgment of the trial court.

AFFIRMED.

. A judgment rendered on August 21, 1995, subsequent to this appeal being lodged, is not before this court and will not be considered.

. See Dufrene v. Guarino, 343 So.2d 1097 (La.App. 4th Cir.1977), writs denied, 343 So.2d 1069, 1070 (La. 1977).