712 So.2d 46 (1998)
Richelle A. Sims KIMBALL and Edward C. Capron, Jr.
v.
ALLSTATE INSURANCE COMPANY, et al.
Gena DIMIAO
v.
Vicky HARDING, et al.
Theresa Lancaster and Richard LANCASTER
v.
CITY OF ZACHARY, The City of Baton Rouge/Parish of East Baton Rouge, The State of Louisiana Through the Department of Transportation and Development.
Nos. 97-CA-2885, 97-CA-2956.
Supreme Court of Louisiana.
April 14, 1998.
*49 Claude J. Naquin, Jr., Michael E. Ponder, Baton Rouge, for Applicant in No. 97-CA-2956.
Rick A. Caballero, Due, Caballero, Perry, Price & Guidry, Baton Rouge, Randolph A. Piedrahita, Shreveport, Richard P. Ieyoub, Atty. Gen., John C. Young, Baton Rouge, for Respondent in No. 97-CA-2956.
Randall J. Cashio, Michael E. Ponder, Frank J. Gremillion, Baton Rouge, for Applicant in No. 97-CA-2885.
Donald W. Price, Paul H. Due, Due, Caballero, Perry, Price & Guidry, Baton Rouge, Francis A. Rougeou, Jr., Donald R. Smith, Smith & Davis, Baton Rouge, John W. Perry, Jr., William J. Doran, Jr., Baton Rouge, Richard P. Ieyoub, Atty. Gen., Carlos Finalet, III, William F. Janney, Lane, Fertitta, Lane & Tullos, Baton Rouge, for Respondents in No. 97-CA-2885.
Larry Harding and Vicky Harding, Respondents, pro se, in No. 97-CA-2885.
Louis G. Gruntz, Jr., Jefferson, Charles L. Patin, Jr., Baton Rouge, for amici curiae Jefferson Parish and Louisiana Municipal Association in No. 97-CA-2885.
KIMBALL, Justice.[*]
In two separate civil cases filed in the Nineteenth Judicial District Court, a trial judge declared La. R.S. 13:5105(C) to be a local or special law in violation of La. Const. Art. III, § 12(A), and declared La. R.S. 13:5105(D) to be an unconstitutional delegation of the legislative authority to political subdivisions in violation of La. Const. Art. XII, § 10(C). Additionally, in one of the cases, the trial court declared a City of Baton Rouge/Parish of East Baton Rouge [hereinafter "City-Parish"] Resolution to be an unconstitutional assertion of municipal authority into judicial procedure in violation of La. Const. Art. VI, § 25. We agree that La. R.S. 13:5105(C) is a special law concerning civil actions prohibited by La. Const. Art. III, § 12(A) and affirm that portion of the trial court's judgment. However, because we find La. R.S. 13:5105(D) does not contravene either La. Const. Art. XII, § 10(C) or any other constitutional provision argued and briefed by plaintiffs to this court, we reverse the trial court in these respects for the reasons stated herein. Furthermore, we also reverse the trial court's holding that the resolution is unconstitutional under La. Const. Art. VI, § 25.

FACTS
On December 29, 1990, Richelle Sims Kimball[1] was injured when the car she was riding in, operated by Vicky Harding, lost control and collided with another vehicle operated by Gena Dimiao. Kimball's mother and grandfather, as guardian and custodian of the minor, filed suit on January 15, 1991 against Harding and others. Gena Dimiao also filed suit on August 20, 1991. Both plaintiffs later added the City-Parish as a defendant, and the two matters were consolidated for trial. Within ten days of the effective date of Act 598 of 1995, which amended La. R.S. 13:5105 to add Subsection C, the City-Parish requested a trial by jury which was granted. Plaintiffs later filed a motion to strike the jury trial, alleging Act 598 could not be retroactively applied to a cause of action arising before 1995 and was, in any case, an unconstitutional local or special law. The trial judge granted the motion, apparently finding the Act could not be applied retroactively, and struck the jury. The first circuit court of appeal, citing its opinion in William Blanchard, et al. v. City Parish of East Baton Rouge, et al., 95-2011 (La.App. 1 st Cir. 4/30/96); 674 So.2d 317, writ denied, 96-1511 (La.9/20/96), 679 So.2d 443, reversed the trial court's granting of the plaintiffs' motion to strike the jury and remanded for a hearing on the constitutionality of Section C.[2] *50 Around the same time, Act 63 of 1996 was passed, amending La. R.S. 13:5105 to add Subsection D. Pursuant to Section D, the City-Parish passed the necessary resolution, No. 36859, and again requested a jury trial. Plaintiffs then filed a motion to have Sections C and D declared unconstitutional. The trial court issued a judgment declaring Section C to be an unconstitutional local or special law which affects civil proceedings and Subsection D to be an improper delegation of the legislative authority to political subdivisions.
Theresa Lancaster was injured on January 27, 1995 in a single-car accident and filed suit against the City-Parish on January 24, 1996. Defendant prayed for a trial by jury in its original answer. In response, plaintiff filed a motion attacking the constitutionality of La. R.S. 13:5105(C), 13:5105(D) and the City-Parish Resolution. The trial court declared Subsection C to be an unconstitutional local or special law which affects civil proceedings under La. Const. Art. III, § 12(A); declared Subsection D to be an unconstitutional delegation of the legislative authority to political subdivisions in violation of La. Const. Art. XII, § 10(C); and declared the City-Parish Resolution to be an unconstitutional assertion of municipal authority into judicial procedure and the procedures of district courts in violation of La. Const. Art. VI, § 25.
The City-Parish filed direct appeals in both cases pursuant to La. Const. Art. V, § 5(D) which provides for a direct appeal to this court where a law or ordinance has been declared unconstitutional. Because of the identical nature of the issues in these cases, the appeals were consolidated by this court.

CONSTITUTIONALITY OF LA. R.S. 13:5105(C)
Subsection (C) of La. R.S. 13:5105 provides:
Notwithstanding the provisions of Subsection A, except upon demand for jury trial timely filed in accordance with law by the city of Baton Rouge or the parish of East Baton Rouge or the plaintiff in a lawsuit against the city of Baton Rouge or the parish of East Baton Rouge, no suit against the city of Baton Rouge or the parish of East Baton Rouge shall be tried by jury. The rights to and limitations upon a jury trial shall be as provided in Code of Civil Procedure 1731 and 1732.
This subsection, added by Acts 1995, No. 598, provides an exception to the general rule provided for by Subsection (A) of La. R.S. 13:5105 which provides, in pertinent part that, "[n]o suit against a political subdivision of the state shall be tried by jury."
The first issue presented for our determination is whether La. R.S. 13:5105(C) is unconstitutional under La. Const. Art. III, § 12(A). The legislature is prohibited from passing any local or special law which deals with any of the subjects enumerated in La. Const. Art. III, § 12(A).[3] The prohibition against certain local or special laws "is intended to reflect a policy decision that legislative resources and attention should be concentrated upon matters of general interest, and that purely local matters should be left to local governing authorities." H. Alston Johnson III, Legislative Process, 36 La. L.Rev. 549, 549 (La.1976); Louisiana Paddlewheels v. Louisiana Riverboat Gaming Com'n, 94-2015, p. 7 (La.11/30/94), 646 So.2d 885, 889. Our inquiry into whether La. R.S. 13:5105(C) is an unconstitutional local or special law begins, then, with a determination of whether the law is, in fact, local or special. If it is, we must then ascertain whether the law concerns a subject listed in Art. III, § 12(A). Because the constitution does not give us much guidance as to the meaning of the terms "local" and "special," we resort to the writings of legal commentators and the jurisprudence of this court to aid us in interpreting this constitutional provision.
Our opinions have tended to blur the lines between a local law and a special law; yet, the terms are actually quite distinctive. Lee Hargrave, "Statutory" and "Horatory" Provisions of the Louisiana Constitution *51 of 1974, 43 La. L.Rev. 647, 668 (La. 1983)("Courts have been less than clear in distinguishing between laws that are local and those that are special. Often, the term `local and special' is used as though it were one concept."). Generally, a statute is considered to be local if it operates only in a particular locality or localities without the possibility of extending its coverage to other areas should the requisite criteria exist or come to exist there. Thus, a law which operates over the whole territory of the state instead of just a particular locality is clearly general, and not local. General and Special Laws in Louisiana, 16 La. L.Rev. 768, 770 (La.1956); Johnson, 36 La. L.Rev. at 549; Polk v. Edwards, 626 So.2d 1128, 1134 (La. 1993); State v. Slay, 370 So.2d 508, 511 (La. 1979); State v. Labauve, 359 So.2d 181, 182-83 (La.1978); .State ex rel. Miller v. Henderson, 329 So.2d 707, 710 (La.1976). When the operation of a law is limited to certain parishes, it is immediately suspect as a local law. Concerned Business and Property Owners of DeSoto, Inc. v. DeSoto Parish School Bd., 531 So.2d 436, 442 (La.1988); Labauve, 359 So.2d at 183.
However, a law is not local, even though its enforcement may be restricted to a particular locality or localities, where the conditions under which it operates simply do not prevail in other localities. City of New Orleans v. Treen, 431 So.2d 390, 394 (La. 1983)("[A] law may be a general law even though limited to one locality if it is general in its terms and its coverage can extend to other areas should the requisite criteria exist there as well or if its operation is limited to a locality through the effect of a reasonable classification such as population, size or physical characteristics and not solely through the specific designation of a certain parish or parishes."); Labauve, 359 So.2d at 182; Davenport v. Hardy, 349 So.2d 858, 863 (La. 1977); Kenneth M. Murchison, Local Government Law, 44 La. L.Rev. 373, 386 (La. 1997)("[A] general law need not apply to every local government within the state; it may confine its coverage to a class or subset of local governments so long as the law applies to all members of the class and the method of classification the law uses is reasonable."); Hargrave, 43 La. L.Rev. at 668("[W]ith a reasonable basis for the classification, the distinction will be allowed."). For example, we noted in Slay, 370 So.2d at 511, that a law which specified a fishing net must have a certain mesh size in some parishes and a different mesh size in others could have been constitutional, and not a local law, if the state had been able to show a reasonable basis for the classification based on the conditions and characteristics of the various parishes. Instead, we found the fish population was not dissimilar enough in the specified parishes to justify the distinction. Similarly, in State v. Clement, 188 La. 923, 178 So. 493 (1938) we found unconstitutionally local a law which provided it was unlawful to enter upon someone else's land for trapping purposes where that land was more than 150 miles from the Louisiana coast, noting there was no reasonable basis for the legislature to have excluded from the scope of the act those swamplands and uncultivated lands within 150 miles from the coast.
Furthermore, a law whose application and immediate effect is restricted to a particular locality is not considered local where persons throughout the state are affected by it or it operates on a subject in which the people at large are interested. Livingston Downs Racing Ass'n Inc v. State, 96-2890, p. 12 (La.12/2/97), 705 So.2d 149, 156; Louisiana Paddlewheels, 94-2015, at p. 7, 646 So.2d at 889; Polk, 626 So.2d at 1134. For example, in Polk, we held the legislature's decision to allow a single facility of a certain sort to be built in only one place within the state was not impermissibly local, but rather, general, because the law pertained to matters of significant interest to the entire state, affected people throughout the state, even though some only indirectly, and was passed to benefit the entire state. See also State v. Dalon, 35 La. Ann. 1141 (La.1883)(An act organizing and establishing the Criminal District Court for the Parish of Orleans was not local because it affected and would benefits all of the people of the state.); Davenport, 349 So.2d at 864; State ex rel. Miller, 329 So.2d at 711. Even though a statute may not constitute a local law under the above considerations, it may still be prohibited by La. Const. Art. III, *52 § 12 if it is a special law dealing with an enumerated topic. Generally speaking, a special law is one which operates upon and affects only a fraction of the persons or a portion of the property encompassed by a classification, granting privileges to some persons while denying them to others. General and Special Laws in Louisiana, 16 La. L.Rev. at 770. A special law is one that confers particular privileges, or imposes peculiar disabilities or burdensome conditions in the exercise of a common right upon a class of persons arbitrarily selected from the general body of those who stand in precisely the same relation to the subject of the law. Johnson, 36 La. L.Rev. at 549; Labauve, 359 So.2d at 182; Teachers' Retirement System of Louisiana v. Vial, 317 So.2d 179, 183 (La.1975)("[A] statute is special if it affects only a certain number of persons within a class and not all persons possessing the characteristics of the class ... [and it is] directed to secure some private advantage or advancement for the benefit of private persons."). As with a law which classifies on the basis of geographic conditions or particularly designated localities, classification of certain parties will not render the law special if it is based on a substantial difference between the class created and the subjects excluded, and there is a reasonable basis for the distinction.
In sum, a law will be considered local or special, and therefore subject to the requirements of La. Const. Art. III, §§ 12 and 13, where its restrictions can affect only a portion of the citizens (special) or a fraction of the property (local) embraced within the created classification, Livingston Downs Racing Ass'n, 96-2890 at p. 11-12, 705 So.2d at 155-56, and where there is no reasonable basis for the creation of the classification or substantial difference between the class created and the subjects excluded justifying the exclusion. Johnson, 36 La. L.Rev. at 551; Kenneth M. Murchison, Local Government Law, 40 La. L.Rev.. 681, 686 (1980). In contradistinction to a local or special law, a general law is one which operates equally and uniformly upon all persons brought within the relations and circumstances for which it provides or operates equally upon all of a designated class which has been founded upon a reasonable classification. Labauve, 359 So.2d at 182; Davenport, 349 So.2d at 863-64.
Considering the above precepts, it becomes clear that La. R.S. 13:5105(C) is not a local law. By its very terms, its geographic application is not limited to any particular locality in the state, and, instead, operates over the whole territory of the state. It applies in every parish in which a plaintiff files suit against either the city of Baton Rouge of the parish of East Baton Rouge. It is not restricted in its application to suits filed in Baton Rouge or East Baton Rouge Parish only. Although Subsection (C) sets the City-Parish apart from other political subdivisions for unique treatment, it cannot be said that this designation of a locality in its role as a party to a lawsuit renders the law applicable only in a particular locality, the essence of a local law.
Subsection (C) is, however, a special law. It singles out the City of Baton Rouge and the Parish of East Baton Rouge, to the exclusion of all other political subdivisions, for special treatment without any suggested or apparent justification for the disparate treatment, despite the fact that all political subdivisions possess the requisite characteristics of the class. It is not a general law because its privileges, and concomitant implicit restrictions, affect only a portion of the persons, here political subdivisions, which fall within the created classification.
Because Subsection (C) is a special law, it is now necessary for us to determine whether it concerns a prohibited subject listed under La. Const. Art. III, § 12(A). The prohibition against the passage of a local or special law which "regulates the practice or jurisdiction of any court" or which "concerns any civil action," can be found as early as the Constitution of 1879, in Art. 46, and has been included in every Louisiana Constitution since then. Currently, La. Const. Art. III, § 12(A) provides in pertinent part:
Prohibitions. Except as otherwise provided in this constitution, the legislature shall not pass a local or special law:
...

*53 (3) Concerning any civil or criminal actions, including ... regulating the practice or jurisdiction of any court....
The trial court in the instant case found that Subsection (C) both regulated the practice or jurisdiction of any court and concerned a civil action. In State ex rel. Vicksburg, S. & P.R. Co. v. Emory, 6 So. 795, 796 (La.1889), this court observed:
Among the prohibited objects of legislation is "regulating the practice or jurisdiction of any court." The meaning of said article is plain and unambiguous. The evident intention is that the general assembly shall enact no local or special law to regulate in any particular locality the jurisdiction or practice of any court in any particular and designated locality, so as to exempt it from the general jurisprudence and practice of the courts throughout the state.
As explained earlier, Subsection (C) does not affect the jurisdiction or practice of any particular court or courts but rather applies in every district court in the state. It applies in every parish in which a plaintiff files suit against either the City of Baton Rouge of the Parish of East Baton Rouge. It is not restricted in its application to Baton Rouge or East Baton Rouge Parish only. Additionally, Subsection (C) does not even affect the "practice" or "jurisdiction" of any court. Whether or not a party to a lawsuit filed in a particular court is able to obtain a jury trial has nothing to do with any court "practice" or administration, nor does it affect any "jurisdiction" of that court.
Subsection (C) does, however, concern civil actions. This court has consistently defined this portion of Art. III, § 12(A)(3) to prohibit the legislature from passing a local or special law which affects any particular lawsuit. See, e.g., Everett v. Goldman, 359 So.2d 1256, 1269-70 (La.1978)(The "concerning any civil action" prohibition applied only where there is "concerned a distinct lawsuit or lawsuits or where the group of affected litigants or lawsuits has no rationally distinctive characteristics."); State v. McCue, 141 La. 417, 75 So. 100 (1917); State v. Felter, 141 La. 58, 74 So. 629 (1917). Here, Subsection (C) concerns and affects not only an individual lawsuit, but, more egregiously, any and all lawsuits in which the City of Baton Rouge of the Parish of East Baton Rouge is made a defendant. Consequently, Subsection (C) is a special law which concerns civil actions and is unconstitutional under La. Const. Art. III, § 12(A)(3).

CONSTITUTIONALITY OF LA. R.S. 13:5105(D)
Subsection (D) of La. R.S. 13:5105 provides:
Notwithstanding the provisions of Subsection A, a political subdivision, by general ordinance or resolution, may waive the prohibition against a jury trial provided in Subsection A of this Section. Whenever the jury trial prohibition is waived by a political subdivision, and a jury trial is demanded by the political subdivision or the plaintiff in a suit against the political subdivision or against an officer or employee of the political subdivision, the demand for a jury trial shall be timely filed in accordance with law. The rights to and limitations upon a jury trial shall be as provided in Code of Civil Procedure Articles 1731 and 1732.
This subsection was enacted by Acts 1996, No. 63, Sec. 1. Pursuant to the Act, the Metropolitan Council of the City-Parish passed Resolution 36859 on May 8, 1996 which "waive[d] the prohibition against jury trials in litigation against this political subdivision" and provided that the Parish Attorney was authorized to "waive the prohibition against jury trials by demanding same in any pending lawsuit or any future lawsuit as he deems appropriate." Thus, in any lawsuit pending on that date or in any future litigation against the City-Parish, either the Parish Attorney or the plaintiff could request a jury trial.
The trial court in the instant cases found Subsection (D) to be an unconstitutional delegation of the legislative authority to political subdivisions in violation of La. Const. Art. XII, § 10(C). In oral reasons in one case, the trial court stated:
Louisiana Constitution Article 1210(C) [sic] says the Legislature shall provide a procedure for suits against the State, the State agency or political subdivision. That does not authorize the State to let the political *54 subdivision decide what the procedure is going to be. That is to me an unconstitutional delegation of that power and it would be similar to the Legislature saying, well we're going to let the political subdivisions decide what type of cases they are going to have, jury trials or non-jury trials, and that would be, in my opinion, clearly unconstitutional. They can provide a procedure for political subdivisions to have jury trials or non-jury trials but it appears to be a clear violation of the constitutional provision to let them select by local ordinance whether or not they are going to have jury trials or non-jury trials and the law should be the same in every parish so that you don't have to lose your rights just by driving across the parish line.
In the other case below, the trial court's reasons were as follows:
R.S. 13:5105(D) is an unconstitutional delegation of legislative authority to political subdivisions, because the source of such authority stems from Louisiana Constitution Article XII Section 10(C) which provides that the legislature shall provide the procedure for suits against the state, a state agency, and a political subdivision. A political subdivision cannot pass an ordinance deciding whether or not it will have a jury trial.
With respect to this particular constitutional provision, the plaintiffs also argue R.S. 13:5105(D) violates Art. XII, § 10(C) because that provision requires a "uniform procedure" be applicable to all suits against political subdivisions, and allowing the political subdivisions to determine whether or not to pass the resolution and request a jury trial results in a different "procedure" applying in every case against a political subdivision depending on whether or not the resolution has been passed. An understanding of the meaning of this constitutional provision and whether the trial court's application of it is correct requires consideration of the historical evolution of this particular provision as well as its chronological interplay with La. R.S. 13:5105 and its predecessors. Our careful review reveals no support in either the legislative history or the jurisprudence for these propositions.
Prior to the adoption of the 1974 constitution, it was necessary to obtain individual authorization from the legislature in order to file suit against the state or any of its political subdivisions. Article 192 of the 1898 and 1913 constitutions provided the following with respect to this issue:
Whenever the General Assembly shall authorize a suit against the State it shall provide in the act authorizing the same, that such suit be instituted before the District Court at the State Capital; that citation to answer such suit shall be served both upon the Governor and the Attorney-General; that the Supreme Court of the State shall have appellate jurisdiction in such suit, without regard to the amount involved; that the only object of such suit, and the only effect of the judgment therein, shall be a judicial interpretation of the legal rights of the parties for the consideration of the General Assembly in making appropriations; that the burden of proof shall rest upon the plaintiff or claimant to show that the claim sued upon is a legal and valid obligation of the State, incurred in strict conformity to law, not in violation of the Constitution of the State or of the United States, and for a valid consideration, and that all these things shall be affirmatively declared by the Supreme Court before any judgment is recognized for any purpose against the State.
In Lewis v. State, 207 La. 194, 20 So.2d 917, 919 (1945), this court observed that by specifically delineating criteria for venue, citation and service, appellate jurisdiction, burden of proof, and the effect of the judgment, the 1898 and 1921 constitutional provision set forth "in great detail" the "procedure to be followed" and "the effect of the judgment to be rendered in such suits." We went on to note that when the constitution was redrawn in 1921, "the drastic features of the demand and of the suit and the effect of the judgment when rendered ... were eliminated and more freedom of action was allowed the Legislature in granting such authorization." Lewis, 20 So.2d at 919. Article III, § 35 of the 1921 constitution succinctly provided:
Suits against State.Whenever the Legislature shall authorize suit to be filed *55 against the State, it shall provide a method of procedure and the effect of the judgments which may be rendered therein.
Under this constitutional provision, "the conditions imposed upon a plaintiff authorized to sue the State may be as regards the procedure to be followed as complicated or as simple as the Legislature, in its discretion, may deem it necessary to prescribe." Lewis, 20 So.2d at 919. In Lewis, this court held that the legislature had fulfilled its duties under Art. III, § 35 when it passed an act authorizing Miss Annie C. Lewis to sue the State of Louisiana in tort where the title of the Act mentioned the required venue, and the act itself provided only that plaintiff could institute a suit, that the state treasurer was authorized to pay any resulting judgment, and that prescription was waived. We found the legislature had the "unrestricted power to provide a method of procedure" for this suit, and that it was not even required to provide for venue "unless it decided to depart from the well established rule[s] of procedure [for venue of] a tort action." Lewis, 20 So.2d at 921-22. Thus, we wrote that when the legislature grants authority to sue the State, the rules of law and procedure applicable to suits between individuals on similar causes of action would apply to the suit as long as they were not "negatived by the plain terms of the grant."
In a departure from the Lewis opinion's implication that the legislature was free to set a "procedure," or not, for the institution of a suit against the state, this court in Fouchaux v. Board of Com'rs of Port of New Orleans, 219 La. 354, 53 So.2d 128 (1951) found a legislative act constitutionally deficient under Art. III, § 35, as quoted earlier, because, inter alia, the act's provision that the procedure in the suit would be the same as in suits between private litigants did not comply with the legislature's "mandate" to specifically state a "method of procedure." For illustrative purposes, this court referred to another legislative act authorizing a suit against the state as an example of an act in which it believed the legislature had adequately set forth the necessary "procedure." The act set forth only the necessary venue for the suit, who should be served, and how the judgment would be satisfied. Presumably, all other procedural issues would be determined under the law applicable to suits between private litigants.
Article III, § 35 was amended in 1946 to provide more details about the legislature's discretionary power to consent to suit, the procedures applicable to such suits and the enforcement of judgments resulting therefrom. Art. 3, § 35 provided (emphasis added):
Whenever the Legislature shall authorize suit to be filed against the State it shall provide the method for citing the State therein and shall designate the court or courts in which the suit or suits authorized may be instituted and may waive any prescription which may have accrued in favor of the State against the claim or claims on which suit is so authorized. The procedure in such suits, except as regards citation and original jurisdiction, shall be the same as in suits between private litigants, but no judgment for money rendered against the State shall be satisfied except out of monies appropriated by the Legislature for the purpose. For the purpose of such suits the State shall be considered as being domiciled in the Capitol. No such suit shall be instituted in any court other than a Court of Louisiana. Except as otherwise specially provided in this section, the effect of any authorization by the Legislature for a suit against the State shall be nothing more than a waiver of the State's immunity from suit insofar as the suit so authorized is concerned.
Thus, with regard to the "procedure" of the suit contemplated by Art. III, § 35, we have held:
This constitutional section specifically limits and circumscribes the method to be employed by the Legislature, in that, whenever it shall do so it shall: (1) provide the method for citing the State therein; (2) designate the Louisiana court or courts in which the suit or suits may be instituted; and (3) may waive any accrued prescription in favor of the State against the claim or claims on which the suit is so authorized. It is therein further declared *56 that the procedure in such suits shall be the same as in suits between private litigants.

Cobb v. Louisiana Bd. of Institutions, 237 La. 315, 111 So.2d 126, 135 (1958).
Some pertinent observations can be gleaned from the above review at this point. First, neither this court nor the legislature has ever interpreted its constitutional mandate to provide a "procedure" for suits against the state to require that the legislature determine whether or not there would be a jury trial in suits against political subdivisions. Rather, the "procedure" which was required to be set forth in the legislative authorization of the suit was limited to issues of venue, citation and service of process, and prescription. Furthermore, where not explicitly provided for in the legislative authorization to institute a suit (and it appears this was not a common consideration to be included in such acts, if ever) the laws on requesting jury trials which applied between private litigants would also apply to these suits. As such, the political subdivisions had the same opportunity as private litigants to make the tactical decision as to whether or not to request a jury trial with the result that some trials against political subdivisions would be tried by judge and some would be by jury. This latter observation forms the basis of the second premise which is that it does not appear there was any intent under the prior constitutions or in the legislative history to require that trials against political subdivisions all be conducted in the same manner, be it by jury or by judge.
In 1959, this court construed the sovereign immunity provision as it then existed as doing no more than giving the legislature the power to waive the traditional immunity from suit, but not the immunity from substantive tort liability. See Chamberlain v. State Through Dept. of Transp. and Development, 624 So.2d 874, 880 (La.1993), referring to Duree v. Maryland Casualty Co., 238 La. 166, 114 So.2d 594 (1959) and Stephens v. Natchitoches Parish School Board, 238 La. 388, 115 So.2d 793 (1959). This construction prompted a 1960 constitutional amendment to add language to the constitution which would assure that any waiver of immunity by the legislature would be both from suit and liability. Chamberlain, Id. After its amendment in 1960, Art. III, § 35 provided (emphasis added):
The Legislature is empowered to waive, by special or general laws or resolutions, the immunity from suit and from liability of the state, and of parishes, municipalities, political subdivisions, public boards, institutions, departments, commissions, districts, corporations, agencies and authorities and other public or governmental bodies; and each authorization by the Legislature for suit against the State or other such public body ... shall be construed to be and shall be effective and valid for all purposes ... as a waiver of the defendant's immunity both from suit and from liability. The Legislature shall, by special or general laws or resolutions, prescribe the procedural rules, including rules of venue and service or process, to govern suits against the state and other public bodies; the procedure in such suits, in the absence of applicable procedural rules promulgated by the Legislature, to be the same as in suits between private litigants. No judgment against the state or any public body shall be exigible, payable or paid except out of funds appropriated for payment thereof. The Legislature may waive any prescription or peremption which may have accrued in favor of the state or other public body against any claim or claims on which suit is so authorized; ... No suit authorized under this constitutional provision shall be instituted in any court other than a Louisiana State court....
The amendment subtly changed the legislature's mandate under the provision to provide "procedural" rules for suits against the state or political subdivisions. Whereas prior to the amendment the legislature was restricted to providing only for venue and service of process, and all other procedural issues were to be governed by the rules normally applicable to private litigants, after the amendment, such was not required given the catch-all nature of the phrase: "the procedure in such suits, in the absence of applicable procedural rules promulgated by the Legislature, to be the same as in suits between *57 private litigants." Thus, the legislature had the authority to adopt procedural rules different from those normally applicable to private litigants in areas other than those related to venue and service of process. It is additionally clear that Art. III, § 35 as amended in 1960, as with its earlier counterparts, did not require the legislature to promulgate any rules specifically applicable to whether or not a suit against a political subdivision would be by judge or jury, did not require that the legislature make the decision as to the mode of trial on behalf of the political subdivisions, nor did it require that all suits against political subdivisions be conducted in the same mode.
In 1960, the Legislature passed Act No. 27 "[t]o establish procedural rules of law in certain actions against the state or other public bodies, and to provide a method for payment of judgment rendered in such actions." The Act was to apply only to suits against the state or other public bodies "expressly authorized by special or general law or resolution passed by the Legislature." In addition to providing for venue, citation and service of process, prescription, and payment of judgments, Subsection 4 of this Act provided that no suit against the state or other public body shall be tried by jury. This particular subsection was codified at R.S. 13:5104. The Act also provided all other procedural questions would be determined in accordance with the same laws which applied in suits between private parties. The adoption of the prohibition against jury trials in a suit against the state or any other public body was, although not mandated by Art. III, § 35, in keeping with the legislature's permissive authority thereunder to adopt procedural rules applicable to suits against the state.
With the passage of a new constitution in 1974, Art. III, § 35 was redesignated as Art. XII, § 10, and provided (emphasis added):
(A) No Immunity in Contract and Tort. Neither the state, a state agency, nor a political subdivision shall be immune from suit and liability in contract or for injury to person or property.
(B) Waiver in Other Suits. The legislature may authorize other suits against the state, a state agency, or a political subdivision. A measure authorizing suit shall waive immunity from suit and liability.
(C) Procedure; Judgments. The legislature shall provide a procedure for suits against the state, a state agency, or a political subdivision. It shall provide for the effect of a judgment, but no public property or public funds shall be subject to seizure. No judgment against the state, a state agency, or a political subdivision shall be exigible, payable, or paid except from funds appropriated therefor by the legislature or by the political subdivision against which judgment is rendered. legislature or by the political subdivision against which the judgment is rendered.[4]
The 1974 Constitution contains an absolute prohibition against immunity from suit and immunity from liability in contract and tort suits against the state or its agencies or political subdivisions. Although Paragraph (B) provides a legislative waiver is required to sue the state or its political subdivisions for any action other than one in contract or tort, obtaining a legislative waiver of immunity from suit and/or tort was no longer required *58 in cases involving contract and tort claims. In so doing, the "framers removed the former discretionary right to consent to suit and liability in tort from the legislature and reserved that right inviolate to the people, making that right a concrete one, beyond the legislature's reach." Chamberlain, 624 So.2d at 881. Regarding the "procedure" to be used in suits against state entities, Art. XII, § 10(C) simply provides the legislature "shall provide a procedure for suits against the state, a state agency, or a political subdivision" and shall "provide for the effect of a judgment." This provision is virtually identical to Art. III, § 35 of the 1921 constitution, prior to its 1946 amendment, which provided the legislature "shall provide a method of procedure and the effect of the judgments which may be rendered therein." In Chamberlain, we described the powers given the legislature under Paragraph (C) as "twofold." First, Paragraph (C) allocates to the legislature the power to establish "procedures for suits" authorized under Paragraphs (A) and (B). Second, Paragraph (C) allocates to the legislature the power to enact legislation with respect to the enforcement of judgments against the state and to provide for appropriations. Chamberlain, 624 So.2d at 883.
In 1975, with Act No. 434, the legislature, in an effort to be more specific as to the applicability of the provision, amended La. R.S. 13:5104 and redesignated it as La. R.S. 13:5105 to provide:
No suit against the state or a state agency or political subdivision shall be tried by jury.
Within one year, La. R.S. 13:5105 was subject to two constitutional attacks. First, in Carter v. City of New Orleans, 327 So.2d 488 (La.App. 4th Cir.1976), the court of appeal granted plaintiffs' application to review the trial court's ruling granting the City of New Orleans' motion to strike plaintiff's request for a jury trial in a tort suit brought by plaintiff against the City. The issues, as formulated by the appellate court, were whether the legislature was permitted to prohibit jury trials in R.S. 13:5105 under its authority to "provide a procedure for suits against" political subdivisions found in Paragraph (C) of Art. XII, § 10, and whether doing so violated Paragraph (A) of that article which abrogates sovereign immunity in tort and contract suits. Noting the right to trial by jury was a "legislative matter" and not protected under the 1974 Constitution other than where an expropriation suit was involved, the court found: (1) Art. XII, § 10(C) does not "in any way circumscribe or limit the authority or judgment of the legislature in providing what such procedure shall be;" and (2) trial by judge or by jury is a means or mode of proceeding by which a legal right is enforced and is thus a procedural matter which falls within the scope of Art. XII, § 10(C). Carter, 327 So.2d at 490-91. Thus, the court of appeal affirmed the trial court's judgment.[5]
A similar issue was brought directly to this court when we granted a writ of certiorari in Jones v. City of Kenner, 338 So.2d 606 (La. 1976). Therein, the district court had ruled that a suit against the City of Kenner in tort was triable by judge alone. In response to plaintiffs' argument that La. R.S. 13:5105 violated La. Const. Art. XII, § 10(A)'s abolition of governmental immunity against tort suits by injured persons, this court noted:
Subsection (C) of that article specifically authorizes the legislature "to provide a procedure" for suits against public bodies. On the basis of the sole argument urged to us, we are unable to hold that the procedural authorization of non-jury trial offends Article 12, Section 10 of our 1974 constitution.

Jones, 338 So.2d at 608.
These cases stand for the proposition that the legislature's decision to prohibit jury trials in suits against governmental entities was both within its authority under Paragraph (C) and did not resurrect sovereign immunity in violation of Paragraph (A) of La. Const. Art. XII, § 10.
*59 In Rudolph v. Massachusetts Bay Ins. Co., 472 So.2d 901 (La.1985), the constitutionality of La. R.S. 13:5105 was again challenged, but this time on different grounds. The trial court in that case had declared the statute unconstitutional as violating the U.S. Constitution's Seventh Amendment right to civil trial by jury and its Fourteenth Amendment rights to due process of law and equal protection. This court reversed in all respects. The statute did not violate the Seventh Amendment because that amendment is, by its own terms, applicable only to the federal government, and the United States Supreme Court had never "selectively incorporated" the right to a jury trial in a civil case into the due process clause of the fourteenth amendment which would make it applicable to the states. Regarding equal protection, this court concluded the classification of plaintiffs injured by governmental tortfeasors, as opposed to private tortfeasors, was subject to the lowest tier of scrutiny and would not be constitutionally infirm provided there was a legitimate governmental interest for the classification. Finding a legitimate state interest in preserving its financial resources and in minimizing the delays and greater courts costs generally attendant to jury trials, this court reversed the trial court's finding of unconstitutionality.
With Acts 1993, No. 993, the legislature again amended La. R.S. 13:5105 to continue the prohibition of jury trials in suits against political subdivisions but to allow for either the state, state agency, or plaintiff to request a jury trial in suits against the state or a state agency.[6] Subsequently, Acts 1995, No. 598 added the previously discussed Subsection (C) dealing specifically with suits against the city of Baton Rouge and the parish of East Baton Rouge, Finally, with Acts 1996, No. 239, Subsection (D) was added to La. R.S. 13:5105 to provide that either the plaintiff or the political subdivision could request a jury trial where the political subdivision has passed a general ordinance or resolution waiving the prohibition against jury trials.
This lengthy, detailed review of the evolution of La. Const. Art. XII, § 10(C) is of paramount importance in our consideration of whether the trial court correctly held that provision prohibits the legislature from adopting a "procedure" which allows a political subdivision to adopt a resolution generally removing it from the prohibition on jury trials provided by R.S. 13:5105(A) and allowing either the political subdivision or the plaintiff to request a jury trial in a suit against a political subdivision. In simpler terms, does Art. XII, § 10(C) prohibit the legislature from allowing the political subdivisions to make the decision in suits against it as to whether or not to have a jury trial? The historical development of the pertinent portions of Paragraph (C) reveal that, while at various times under various versions of this constitutional provision, we have held it incumbent on the legislature under that provision to adopt rules related to venue and citation and service of process, this court has never held, nor does it appear to have been the framers' intent, that Paragraph (C) be interpreted as requiring the legislature to even address the issue of mode of trial. Furthermore, it does not seem this particular provision was intended to require or mandate that the legislature make the tactical decision on behalf of political subdivisions as to whether or not to request a jury trial in suits against political subdivisions. Although Paragraph (C) very definitely gives the legislature that authority, which it has chosen to exercise by the enactment of La. R.S. 13:5105(A), the legislature's decision to provide an exception to that rule and to allow the individual political subdivisions to make the decision as to whether to request a jury trial in R.S. 13:5105(D) is not violative of Paragraph (C) of Art. XII, § 10(C).
*60 Similarly, we reject plaintiffs' argument that Art. XII, § 10(C) requires a single procedure applicable to suits against political subdivisions, and that R.S. 13:5105(D) violates this provision because it allows for a multiplicity of procedures. It should be clear at this point that the legislature, if it so chose, could repeal R.S. 13:5105(A) and not address the issue of jury trials at all. As such, the generally applicable rules relating to the request of a jury trial would apply, with the result that in some suits against political subdivisions, there would be a jury trial, and in others, there would be a trial by judge. Indeed, until the passage of Act No. 27 in 1960, which adopted the initial prohibition against jury trials, this appears to have been the case. That the legislature chose to adopt a procedure which resulted in all suits against political subdivisions utilizing the identical mode of trial from 1960 until the addition of Subsections (C) and (D) to R.S. 13:5105 in 1995 and 1996 was its prerogative in light of the constitutional authority given it to do so, but was not its constitutional duty. Likewise, the legislature's choice to adopt a single procedure in Subsection (D) which gives the political subdivisions the power to make the decision on a political subdivision by political subdivision basis as to whether or not to request a jury trial is also within that constitutional authority. We see no intent in the entire history of Art. XII, § 12(C) which would support any inference that the legislature is required to provide for the same mode of trial, be it by judge or by jury, in all suits against political subdivisions.
Our conclusions are buttressed by the transcripts of the 1974 Constitutional Convention. A thorough review of the discussions in the transcripts leading up to the adoption of Art. XII, § 10(C) reveals only one comment by one delegate as to the meaning of the provision requiring the legislature to "provide a procedure" for bringing suits against the state or its political subdivisions. Delegate DeBlieux, at one point in the discussions, simply referred to this provision as requiring the legislature to provide "how suits will be initiated." Vol. V, Records of the Louisiana Constitutional Convention of 1973: Convention Transcripts, p. 413 (July 26, 1973)(emphasis added). This comment refers only to procedures related to the initiation of a suit, of which the selection of mode of trial is not one. Other than this, there is a total lack of any discussion even intimating the legislature was required to make the determination as to whether or not a suit against political subdivision could be tried by jury, much less that all suits against all political subdivisions had to be tried under the same mode.
Although not found so by the trial court, plaintiffs additionally argue R.S. 13:5105(D) violates La. Const. Arts. III, § 1(A) and III, § 12(A)(3) & (B). Article III, § 1(A) provides in pertinent part:
(A) Legislative Power of State. The legislative power of the state is vested in a legislature, consisting of a Senate and a House of Representatives.
Because the right to a jury trial in a civil case is not fundamental, i.e. is not made mandatory on the states under the Fourteenth Amendment and is not constitutionally enshrined in the 1974 Louisiana Constitution, the legislature can pass any law affecting a party's ability to obtain a jury trial provided it does not violate any constitutional provision. The legislature has, in fact, done this in La. C.C.P. arts. 1731-1736 which provide, inter alia, for limitations upon one's ability to obtain a jury trial in certain cases. Where the limitations do not apply, the legislature has chosen to allow the parties in a civil suit to freely determine whether or not to request a jury trial. Similarly, with the enactment of R.S. 13:5105(D), the legislature, in its wisdom, has chosen to allow political subdivisions being sued as parties in civil suits to determine whether or not to pass a resolution which would allow the parties in those suits to elect a jury trial. The ability of a private party, in a suit between private litigants, and of a political subdivision, in a suit against it, to elect whether or not to request a jury trial, is not an exercise of legislative power by these parties but rather results from an exercise of legislative powerthe legislature's decision to allow these parties to make this type of tactical decision for themselves. Neither of the acts is a delegation, improper or otherwise, of legislative power *61 and therefore not a violation of La. Const. Art. III, § 1(A).
Nor do we find merit in plaintiffs' contention La. R.S. 13:5105(D) violates La. Const. Art. III, § 12(B). That section provides the "legislature shall not indirectly enact special or local laws by the partial repeal or suspension of a general law." Plaintiffs argue that Subsection (D) partially repeals or suspends the general prohibition of jury trials in cases against political subdivisions provided in Subsection (A), resulting in a local or special law. Subsection (D) is not a local or special law, however. It applies in every possible locality throughout the state as well as to every political subdivision in the state. No political subdivision is excluded from the opportunity to adopt the particular resolution.[7]

CONSTITUTIONALITY OF THE CITY-PARISH RESOLUTION
The trial court in the Theresa Lancaster suit found Resolution 36859 of the City-Parish to be unconstitutional under La. Const. Art. VI, § 25 because it constituted an assertion of municipal authority into judicial procedure and the procedures of district courts. That constitutional provision states that, "[n]otwithstanding any provision of this Article, courts and their officers may be established or affected only as provided in Article V of this constitution."[8] The transcript of the 1973 constitutional convention floor debate on this provision is quoted extensively in P & G Retailers, Inc. v. Wright, 590 So.2d 1272 (La.App. 1st Cir.1991) and need not be fully reiterated here. The transcript reveals the section was submitted for inclusion in the constitution by the Chairman of the Judiciary Committee, former Justice Dennis, who stated:
I'm afraid that the popular conception is that a city court or a parish court is part of the parish or city government rather than the state government. If this is so, then a local government charter could create any number of different kinds of courts other than those that we envisioned in the Judiciary Article, because in the Judiciary Article we said you can have other courts authorized by this constitution.... [The purpose of the] Judiciary Article [] was to empower the legislature to move toward a more consistent court system below the district court level throughout the state. If we don't have this, then the Local Government Article might be interpreted to say that regardless of what the Judiciary Article says, you can have any kind of court you want, whether it's different, inconsistent or what, so I ask for you to adopt this amendment, please.
Vol. VII, Records of the Louisiana Constitutional Convention of 1973: Convention Transcripts, p. 1387 (September 22, 1973).
The adoption of a resolution, pursuant to a statute giving the political subdivision the power to adopt it, which allows for that political subdivision to waive the prohibition of R.S. 13:5105(A) and elect on a case-by-case basis whether it desires a jury trial, does not "establish" or "affect" any "court" or "court officer" within the meaning of this constitutional provision. It seems clear Art. VI, § 25 was intended to prohibit local governments from establishing new courts or affecting the *62 jurisdiction, administration or internal workings of existing lower courts.[9] The decision of a political subdivision to pass a resolution which allows it to request a jury trial in suits filed against it, a decision made by private litigants in civil suits every day, is not the kind of local government action this provision was aimed at preventing.

RETROACTIVITY
Having found La. R.S. 13:5105(D) and the City-Parish Resolution survive the constitutional attacks made herein, we observe Subsection (D) and the City-Parish Resolution both became effective after the accidents involved herein which occurred on December 29, 1990 and on January 27, 1995. The trial court did not rule on the retroactive application of either, and the issue was not briefed, argued, or urged to this court other than a brief mention in a footnote. We therefore decline to address this subject, leaving it instead for the trial court's consideration on remand.

CONCLUSION
We affirm that portion of the trial court's decision holding La. R.S. 13:5105(C) to be an unconstitutional special law concerning civil actions in violation of La. Const. Art. III, § 12. We reverse the portions of the trial court's decision which held La. R.S. 13:5105(D) to be unconstitutional under La. Const. Art. XII, § 10(C) and which held the City-Parish Resolution to be unconstitutional under La. Const. Art. VI, § 25.
AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.
NOTES
[*] Johnson, J., not on panel. See Rule IV, Part 2, § 3.
[1] This plaintiff is not related to the author.
[2] In Blanchard, the first circuit held that Act 598 of 1995 enacting R.S. 13:5105(C) is procedural, does not affect any vested rights, and therefore could be applied retroactively to causes of action arising prior to its enactment. See also Adams v. City of Baton Rouge, 95-2515 (La.App. 1st Cir. 4/30/96), 673 So.2d 624, writ denied, 96-1491 (La.9/20/96), 679 So.2d 439, writ denied, 96-1492 (La.9/20/96), 679 So.2d 439, holding same.
[3] For those local or special laws which do not concern one of those subjects, the legislature is required to comply with certain notice requirements contained in La. Const. Art. III, § 13.
[4] Section (C) was again amended in 1995 to give the legislature the authority to erect limits on the extent of a state entity's liability and to limit the amount of recoverable damages. However, this amendment did not change in any significant way the provisions with which we are concerned. Paragraph (C), as amended, now provides:

(C) Limitations; Procedure; Judgments. Notwithstanding Paragraph (A) or (B) or any other provision of this constitution, the legislature by law may limit or provide for the extent of liability of the state, a state agency, or a political subdivision in all cases, including the circumstances giving rise to liability and the kinds and amounts of recoverable damages. It shall provide a procedure for suits against the state, a state agency, or a political subdivision and provide for the effect of a judgment, but no public property or public funds shall be subject to seizure. The legislature may provide that such limitations, procedures, and effects of judgment shall be applicable to existing as well as future claims. No judgment against the state, a state agency, or a political subdivision shall be exigible, payable, or paid except from funds appropriated therefor by the legislature or by the political subdivision against which the judgment is entered.
[5] See also City of New Orleans v. Benson, 95-1505, p. 7-8 (La.App. 4th Cir. 11/30/95), 665 So.2d 1196, 1201, holding that La. Const. Art. XII, § 10(C) "specifically provides that the legislature shall provide procedures for suits against the state and political subdivision" and that this mandate "encompasses the power to dispense with the need for the state or its political subdivisions to furnish security for injunctive relief, which is in the nature of a `procedural' matter."
[6] Acts 1993, No. 993 specifically provided:

No suit against a political subdivision of the state shall be tried by jury. Except upon a demand for jury trial timely filed in accordance with law by the state or a state agency or the plaintiff in a lawsuit against the state or state agency, no suit against the state or a state agency shall be tried by jury.
Whenever a jury trial is demanded by the state, state agency, or the plaintiff in a lawsuit against the state or state agency, the party demanding the jury trial shall pay all costs of the jury trial including the posting of a bond or cash deposit for costs in accordance with Code of Civil Procedure Articles 1733 through 1734.1, inclusive.
[7] Without making any substantive comments on the merits, we note that under La. R.S. 13:5105(D), a plaintiff desiring a jury trial in a suit against a political subdivision which has not adopted a resolution or ordinance under Subsection (D) will not be able to obtain one, instead falling under the jury trial prohibition of Subsection (A) whereas a plaintiff seeking a jury trial in a suit against a political subdivision which has adopted such a resolution will be able to obtain one. Plaintiffs adamantly pointed out, however, they were not raising an equal protection challenge to Subsection (D), and the issue was not briefed or argued to this court. Nor do plaintiffs raise any constitutional challenges to the fact that under Subsection (D), one party to a civil suit, the political subdivision, is in total control over whether or not either party will be able to request a jury trial.
[8] Under La. Const. Art. V, § 5(D), a case shall be appealable to the supreme court if "a law or ordinance has been declared unconstitutional." Although we do not believe a declaration that a resolution is unconstitutional falls under the direct appellate jurisdiction of this court, we nevertheless choose to address the trial court's declaration of unconstitutionality of the instant resolution because it was passed in accordance with La. R.S. 13:5105(D), the constitutionality of which we have addressed herein, and because the two are inextricably intertwined.
[9] See, e.g. P & G Retailers, Inc. v. Wright, 590 So.2d 1272 (La.App. 1st Cir.1991) holding that an ordinance providing for an "appeal" to the district court from a decision of the Alcoholic Beverage Control Board violated La. Const. Art. VI, § 25 where a statute provided instead a trial de novo in the district court.