hWALTZER, J.,
concurring with reasons.
While I agree that the judgment of the trial court should be affirmed, I write separately to concur, because I feel compelled to emphasize that I am convinced that LSA-R.S. 44:3 is not “special legislation” within the meaning of La. Const, of 1974, art. Ill, § 13. To consider the legislation to be “special” would place a significant part of Louisiana’s criminal justice system in jeopardy.
A guiding principle, I believe, is found in LSA-R.S. 44:31, which provides in pertinent part:
A. Providing access to public records is a responsibility and duty of the ... office of a custodian and his employees.
B. (1) Except as otherwise provided in this Chapter or as otherwise specifically provided by law, and in accordance with the provisions of this Chapter any person of the age of majority may inspect, copy or reproduce, or obtain a reproduction of any public record.
(2) The burden of proving that a public record is not subject to inspection, copying, or reproduction shall rest with the custodian. [Emphasis added.]
*404 Thus, the legislature clearly requires that the RULE is disclosure, and places on the party resisting disclosure the burden of proving a specific exception to that rule. One such exception is found in LSA-R.S. 44:3, which protects, inter alia, | ^confidential sources in criminal litigation and, of particular relevance to this case, “Records pertaining to pending criminal litigation ..., except as otherwise provided in Subsection F of this Section.” The legislature makes clear that this exception to the general principle of open disclosure has its own exception, LSA-R.S. 44:3 F, which provides:
Notwithstanding any other provision of law to the contrary, after a period of ten years has lapsed from the date of death of a person by other than natural causes, and upon approval by the district court having jurisdiction over any criminal prosecution which may result due to the death of such person, any prosecutive, investigative, and other law enforcement agency, or any other governmental agency in possession of investigative files or evidence or potential evidence, or any other record, document or item relating to said death shall, upon request, provide copies of all such files, records, and documents to immediate family members of the victim and shall provide unlimited access for any and all purposes to all such evidence, potential evidence, and other items to any member of the immediate family and to any person or persons whom any member of the immediate family has designated for such purposes. The access granted shall include but not be limited to the examination, inspection, photographing, copying, testing, making impressions, and the use in any court proceeding of and conducting forensic studies on such evidence, potential evidence, and other items. For the purposes of this Subsection, the term “immediate family” shall mean the surviving spouse, children, grandchildren, and siblings of the victim. [Emphasis added.]
According to the Historical and Statutory Notes accompanying LSA-R.S. 44:3, Acts 1999, No. 484, § 1 inserted in paragraph A(l), “except as otherwise provided in Subsection F of this Section” and added Subsection F relating to provision of evidence to the victim’s family ten years after the date of the victim’s death from other than natural causes. Section 2 of Acts 1999, No. 484 provided:
The provisions of this Act are procedural and remedial in nature and shall be applicable to records and investigative reports, files, evidence, potential evidence, or any other record, document, or item compiled, prepared, or obtained prior to the effective date of this Act.
LAct 484 became effective on 18 June 1999, upon signature of the Governor.
There is no question that, although Mr. Israel Trestman died of apparently unnatural causes on 24 April 1989, the State has not charged anyone with his homicide. The request for public record information made by his widow and son on their own behalf and on behalf of their designees falls squarely within the terms of Subsection F.
In its attempt to resist disclosure of the public records in Mr. Trestman’s case, the City of New Orleans, apparently as custodian of the records of the New Orleans Police Department, contends that Act 484 of 1999 is unconstitutional.[1] The City has asserted various other claims in an attempt to convince this Court to reverse the judgment of the trial court. The City *405 asserts, inter alia, that Act 484 is a “special law”, subject to certain restrictions by La. Const, of 1974, art. Ill, § 12(A)(8) and § 13. Section 12(A)(3) provides:
Except as otherwise provided in this' constitution, the legislature shall not pass a ... special law:
[[Image here]]
(3) Concerning any civil or criminal actions, including changing the venue in civil or criminal cases, or regulating the practice or jurisdiction of any court, or changing the rules of evidence in any judicial proceeding or inquiry before courts, or providing or changing methods for the collection of debts or the enforcement of judgments, or prescribing the effects of judicial sales.
Section 13 provides that a special law may be enacted with certain notice; however, there is no indication that the legislature gave Section 13 notice in connection with its enactment of Act 484.
The gravamen of appellant’s appeal is that Act 484 is “special” within the meaning of the Louisiana Constitution of 1974 because it carves out a narrow class (immediate families of murder victims) whose members are granted a privilege |4with respect to records that is denied members of the general public. The City also suggests that because victims of other violent crimes, and their families, are not accorded this same access, the statute is constitutionally defective.
The City relies on three decisions of the Louisiana Supreme Court: Teachers’ Retirement System of Louisiana v. Vial, 317 So.2d 179 (La.1975); State v. Labauve, 359 So.2d 181 (La.1978); and Kimball v. Allstate Insurance Company, 97-2885 (La.4/14/98), 712 So.2d 46. A close reading of these cases convinces me that they do not support the City’s argument.
In Vial, the daughter of a deceased retired teacher contended that the statutory retirement plan allowing disposition of her mother’s accumulated contribution was a “special law” under the prior Louisiana Constitution of 1921 in that it changed the law of descent or succession and gave effect to informal or invalid wills or deeds, or to any illegal disposition of property. See, La. Const, of 1921, art. IV, § 4. The court held:
General laws are those that operate equally and uniformly upon all persons brought within the relations and circumstances for which they provide or that operate equally upon all persons of a designated class founded upon a reasonable and proper classification. 317 So.2d at 183.
Applying that principle to the Trestman case, the salient question is whether the class of persons (immediate family of murder victims) is “reasonable and proper.” I find it quite reasonable in this context to treat the immediate families of murder victims differently than victims of other crimes, no matter how violent or otherwise heinous. The victim can no longer speak for himself. He can no longer affect the pursuit of the perpetrator or the conduct of the investigation. His family has suffered the total and complete loss of their relative. Although the writers of purple prose refer to a “fate worse than death,” in the secular realm death is the |fiultimate finality. No other crime is like murder, and murder is treated differently than other crimes, even crimes of violence. By way of illustration only, examples include the different treatment accorded to various types of homicide with regal’d to penalties, availability of probation, parole and good time, statutes of limitation and the availability of diversionary programs.
The Vial opinion defines a “special law”:
*406 In contrast, a statute is special if it affects only a certain number of persons within a class and not all persons possessing the characteristics of the case. In essence, a special law is one directed to secure some private advantage or advancement for the benefit of private persons. Id.
The Supreme Court held that the retirement laws were not special laws, noting that the retirement system
is founded upon a classification that embraces, without exception, all teachers in state public schools. This classification is reasonable and applies uniformly to persons possessing the controlling characteristic of the class, viz., employment as a teacher within the public schools of Louisiana. Accordingly, the statute is a general law. Id.
To apply this case to the instant one is clearly contrary to the Supreme Court’s decision in Vial and would label the retirement system a special law, since it applies only to public school teachers and not to those who teach in private schools, or who are ancillary employees such as bus drivers and cafeteria workers in the public schools. Accordingly, I conclude that Vial supports the Trestman family’s position in the instant case.
Labauve was decided under the Constitution of 1974. Labauve was convicted of violating a gill net law, LSA-R.S. 56:409, was sentenced to pay a $400 fine, and contended that the law was a “local special law” under La. Const, of 1974, art. Ill, § 12(10), providing that the legislature shall not pass a special law defining any crime. The Supreme Court did not address the “special law” issue, | ^finding that the gill net law is a local law insofar as it prohibits gill nets only in portions of Ter-rebonne and Lafourche parishes south of the Intracoastal Canal. Since the law did not apply to similarly situated other parishes, or to similar locations within the affected parishes, it did not withstand constitutional scrutiny. The per curiam opinion of a sharply divided court held that the statute is “plainly a local law defining a state crime applicable only to a given locality, in violation of the express provision and the intended prohibition of Article 3, Section 12.” Labauve, 359 So.2d at 184.
Applying the principles expressed in that opinion to the instant case, I find the same distinction as that present in Vial. The court implicitly found the classification of certain portions of two parishes to be arbitrary and without reason. In the context of the “local law” issue, the unreasonable carving out of a particular geographic area for special treatment, while leaving other areas similarly situated unaffected by the legislation is on its face arbitrary and unreasonable. For the same reasons discussed in relation to Vial, the creation of a class of murder victims’ immediate families is not arbitrary. Therefore, La-bauve does not support the City’s position.
The Kimball opinion, likewise, does not support the City’s argument. The Supreme Court struck down LSA-R.S. 13:5105(C), finding it to be a “special law” within the meaning of La. Const, of 1974 art. Ill, § 12(A)(3), concerning any civil actions. LSA-R.S. 13:5105(A) prohibits jury trial in suits against political subdivisions of the state. Subsection (C) was enacted in 1995 to provide an exception to that prohibition upon timely demand for jury trial filed in accordance with law by the city of Baton Rouge or the parish of East Baton Rouge or by a plaintiff who has filed a petition against the city of Baton Rouge or parish of East Baton Rouge.
|7The Supreme Court quite properly held this to be a special law, there being no rational basis for carving out an exception for that particular parish and city in *407 spite of their similar situations to other parishes and cities in this state. The court rejected the notion that this was a “local law,” noting that even though a law whose operation is limited to certain parishes is immediately suspect as a local law,
[A] law is not local, even though its enforcement may be restricted to a particular locality or localities, where the conditions under which it operates simply do not prevail in other localities. Kimball, p. 5, 712 So.2d at 51.
By analogy to the instant case, the conditions under which a law relates to murder clearly do not prevail in other types of crime. For example, the victim is unavailable to assist the investigation and prosecution. The crime itself is not subject to a statute of limitations. The nature of the crime provides no opportunity for any compensation to the victim or meaningful compensation to his family. The Supreme Court noted that a law may be general although limited to one locality if the coverage can extend to other areas should the requisite criteria exist there as well or if its operation is limited to a locality through the effect of a reasonable classification such as population, size or physical characteristics and not solely through the specific designation of a certain parish or parishes. It may confine its coverage “to a class or subset of local governments so long as the law applies to all members of the class and the method of classification the law uses is reasonable.” Id.
In discussing the “special law” issue, the Supreme Court noted:
Generally speaking, a special law is one which operates upon and affects only a fraction of the persons or a portion of the property encompassed by a classification, granting privileges to some persons while denying them to others [Citation omitted.] (“[A] special law is one that confers particular privileges, ... upon a class of persons arbitrarily selected from the general body of those who stand in precisely the same relation to the subject of the law. [Citations omitted.] A statute is special if it affects only a certain number of persons within a class | sand not all persons possessing the characteristics of the class ... [and it is] directed to secure some private advantage or advancement for the benefit of private persons.”) As with a law which classifies on the basis of geographic conditions or particularly designated localities, classification of certain' parties will not render the law special if it is based on a substantial difference between the class created and the subjects excluded, and there is a reasonable basis for the distinction.... In sum, a law will be considered ... special, ... where its restrictions can affect only a portion of the citizens ... embraced within the created classification [citation omitted] where there is no reasonable basis for the creation of the classification or substantial difference between the class created and the subjects excluded justifying the exclusion. [Emphasis added.] Kimball, p. 6, 712 So.2d at 52.
I do not find that explicitly or otherwise the classification of murder victims families, as distinguished from the families of victims of other, lesser crimes, to be unreasonable. However, as discussed above, I am convinced that the benefit conferred by the legislature is based upon a totally reasonable classification. Under the Kim-ball rationale, the legislation would become a special law if, for example, it applied only to this particular family, the widow and son of Mr. Trestman, or only to families of murder victims only who live in a certain area similarly situated with areas to which the law would not apply.
*408 Indeed, if we were to agree with the City’s position that murder victims’ families may not be treated differently from victims of other (presumably violent) crimes, were to be accepted as a general principle, all laws imposing different penalties for different (presumably violent) crimes would be invalidated as special laws. Such a ruling would also eliminate the unlimited suspension of prescription and statutes of limitations applicable in the case of certain homicides. The special law prohibition would likewise be the basis for striking down those laws relating to probation, parole, diversionary programs and the like which treat murder differently than other crimes. Such a result is abhorrent, unreasonable and contrary |ato the plain meaning of the Louisiana Constitution and the jurisprudence thereunder.
I respectfully concur.

. The record does not disclose that the City complied with the requirement that the Louisiana Attorney General be notified of the constitutional challenge.