| MURRAY, J.,
dissenting with reasons:
Because the classification created by La. R.S. 44:3 F is not based upon a meaningful distinction related to the public policies reflected in the Public Records Act, I do not agree with the conclusion that this statute is a general law. I, therefore, must respectfully dissent from the determination that R.S. 44:3F is constitutional.
As the majority acknowledges, Article III, Section 12 A(3) of the Louisiana Constitution prohibits the enactment of legislation that “confers particular privileges, or imposes peculiar disabilities or burdensome conditions in the exercise of a common right upon a class of persons arbitrarily selected from the general body of those who stand in precisely the same relation to the subject of the law.” Alton Johnson, III, Local or Special Legislation, 36 La.L.Rev. 549 (1976); see also State v. Labauve, 359 So.2d 181, 182 (La.1978). Because La. R.S. 44:3 F inures to the benefit of the immediate family of any murder victim where ten years has elapsed since the death, the majority concludes that this statute does not confer any private advantage on any particular private person or serve any special interest, and thus is a general law.
In my view, however, there is no question that this statute carves out a narrow class whose members are granted a privilege with respect to records of Linvestigative and other governmental agencies that is denied members of the general public. This class, unlike the general public or even family members or victims of crimes other than murder, is granted unfettered access to the records, evidence and potential evidence in the hands of any governmental agency once ten years have elapsed, whether or not criminal prosecution is imminent or even in progress.
A legislative enactment that distinguishes between citizens cannot be considered a general law unless the classification it creates is founded on a reasonable basis. Kimball v. Allstate Ins. Co., 97-2885, p. 6 (La.4/14/98), 712 So.2d 46, 52. Such a determination can only be made in the context of the public policy reflected in the statute at issue. In this case, the class created by La. R.S. 44:3 F, immediate family members of murder victims, is founded on a reasonable basis only if the established public policy of non-disclosure is not undermined by the special treatment afforded that class.
The Public Records Act affords to any person of the age of majority the right to inspect, copy or reproduce or obtain a reproduction of any public record. La. R.S. 44:31. The legislature explicitly limited this right of access for certain records of “prosecutive, investigative and law enforcement agencies.” La. R.S. 44:3. Such agencies are not required to disclose records, or the information contained therein, *409 that pertain to pending criminal litigation or “any criminal litigation that can reasonably be anticipated,” until there is a final adjudication or settlement of such litigation. La. R.S. 44:3 A(l). By making the records of prosecutive, investigative and law enforcement agencies inviolate under these circumstances, the legislature has determined that the public’s general right of access must be subordinated to the State’s interest in protecting such records until criminal prosecution is completed or his no longer reasonably anticipated. Therefore, in order to find that the distinction created by La. R.S. 44:3 F is a reasonable one, it is necessary to conclude that the State’s interest in protecting its investigative files is less compelling when the crime investigated is murder. That conclusion, in my opinion, is not warranted.
The State’s interest in protecting its files in a murder investigation is no less compelling than it is in the investigation of any other crime. Because the statute of limitations never runs on murder, the potential for prosecution never completely disappears. Consequently, the State’s interest in protecting murder investigation files from disclosure, including disclosure to the victim’s family, is even more compelling. Although the likelihood that a crime will be solved diminishes with the passage of time, murders have been solved and prosecutions instituted many years after the crime is committed. In an effort to assist them in their efforts to solve a crime, law enforcement agencies routinely withhold details of a murder from the public. It is not uncommon for family members to be suspects in such investigations. In addition, family members may be motivated to protect other family members. Therefore, the disclosure mandated by La. R.S. 44:3 F, which is required even if a prosecution is imminent or even ongoing, seriously undermines law enforcement’s ability to successfully prosecute murder cases. Thus, when considered in the context of the public policy that prompted the legislature to exempt the records of criminal investigations by law enforcement agencies from disclosure, the classification created by La. R.S. 44:3 F is not a reasonable one.
Moreover, it cannot be denied that the family members of murder victims have been selected arbitrarily to enjoy the privilege of unlimited access under this enactment. Although I have great sympathy for the Trestman family, as well as all other families of murder victims, their need for closure is no more compelling than |4that of a rape victim or the family of a kidnap victim. Indeed, anyone who is the victim of a violent crime conceivably would wish to have unfettered access to government files, evidence or potential evidence relating to the crime committed against them. Unfettered access, however, is granted only to family members- of murder victims by R.S. 44:3 F.
Unlike the members of the class created by this statute, a member of the public, including family members or victims of crimes other than murder, regardless of how much time has elapsed, may not have access to such records if the governmental agency contends that the same pertain to pending or reasonably anticipated criminal litigation. La. R.S. 44:3 A(l). The only recourse for someone who is not a member of the class created by La. R.S. 44:3 F is to seek a judicial determination, following a contradictory hearing, that the denial is not in compliance with the statute or constitutional law.[1] La. R.S. 44:3 C; 44:35. *410 Consequently, the classification created by this statute is not “based on a substantial difference between the class created and the subjects excluded,” as required by Article III, Section 12A(3) of the Constitution.
Local or special laws that are not prohibited by Article III, Section 12 may be enacted, but only if certain notice requirements are met. Kimball, supra at p. 4 n. 3, 712 So.2d at 50. Specifically, such legislation may not be enacted “unless notice of the intent to introduce a bill to enact such a law has been published on two separate days.... The last day of publication shall be at least thirty days prior to introduction of the bill. The notice shall state the substance of the contemplated |5law.” La. Const, art. Ill, § 13. Because the legislature did not comply with these notice requirements when it enacted this special legislation, the statute should be declared unconstitutional.
In summary, I have concluded that La. R.S. 44:3 F is special legislation, subject to the notice requirements of Article III, Section 13 of the Constitution. The legislature did not comply with those notice requirements when it enacted this statute, which, as a result, is unconstitutional. Accordingly, I would reverse the judgment of the district court holding otherwise.

. R.S. 44:3 F requires similar approval of the district court having jurisdiction over any criminal prosecution that may result from the death at issue. However, because Section F sets forth the criteria for access, the court's role under this legislation is limited to ensur *410 ing that the disclosure sought related to the death of a person by other than natural causes, that the party seeking disclosure was an immediate family member, and that ten years had passed since the death.