785 So.2d 1 (2001)
Mayor Marc H. MORIAL, and the City of New Orleans
v.
SMITH & WESSON CORPORATION, et al.
No. 2000-CA-1132.
Supreme Court of Louisiana.
April 3, 2001.
Rehearing Denied April 27, 2001.
*5 Robert E. Kerrigan, Jr., Isaac H. Ryan, Deutsch, Kerrigan & Stiles, John F. Renzulli, John J. McCarthy, III, Renzulli & Rutherford, Robert E. Couhig, Jr., Scott E. Delacroix, Jeffrey E. Richardson, Edward M. Morris, Sam A. LeBlanc, Adams & Reese, Steven W. Copley, McCloskey, Langenstein & Stoller, Ernest E. Svenson, Fritz M. Stoller, Timothy A. Bumann, Michael I Branisa, Ethan N. Penn, Daniel A. Reed, Michael P. Bienvenu, Seale, Smith, Zuber & Barnette, James B. Irwin, Steven L. Williamson, Patrick A. Juneau, Barry L. Domingue, William K. Christovich, Charles W. Schmidt, III, Kevin R. Tully, Robert D. Peyton, Christovich & Kearney, Craig A. Livingston, Howard Daigle, Jr., Robert C. Gebhardt, Cyril G. Lowe, Jr., Hulse & Wanek, Michael B. North, Scott S. Patridge, Frilot, Patridge, Kohnke & Clements, Gary M. Zwain, Joseph B. Morton, III, Dana Anderson-Carson, Christian B. Bogart, Duplass, Zwain, Bourgeois & Morton, for Applicant.
Daniel G. Abel, Wendell H. Gauthier, Gauthier, Downing & Labarre, Sidney H. Cates, IV, Kenneth M. Carter, Marcus A. Smith, M. David Gelfand, Carter & Cates, Dan B. Zimmerman, Russ Herman, Maury Herman, Stephen Herman, Herman, Herman, Katz & Cotlar, Richard P. Ieyoub, Atty. Gen., Roy A. Mongrue, Jr., Asst. Atty. Gen., W. Marvin Hall, Joseph L. Spilman, III, Antonio E. Papale, Jr., Mindy B. Patron, Henri Wolbrette, III, McGlinchey Stafford, Douglas E. Kliever, Harold R. Mayberry, Frank J. D'Amico, Jr., Anne T. Turissini, for Respondent.
KIMBALL, Justice.
In 1998, the Mayor and the City of New Orleans filed suit against the firearms industry *6 for damages allegedly suffered by the City related to the manufacture, marketing, promotion, and sale of unreasonably dangerous firearms. Subsequently, the legislature enacted La. R.S. 40:1799, which purports to preclude such suits by abolishing the City's right of action and reserving the authority to bring these suits to the state. The City challenged the constitutionality of the statute on several grounds. For the reasons that follow, we find that La. R.S. 40:1799 may be retroactively applied to the City's suit as it was enacted pursuant to a reasonable exercise of the state's police power and that La. R.S. 40:1799 and its retroactivity provision is not a constitutionally prohibited local or special law.

FACTS AND PROCEDURAL HISTORY
On October 30, 1998, plaintiffs, Mayor Marc H. Morial and the City of New Orleans (collectively referred to as the "City"), filed suit against numerous firearms manufacturers, retailers, distributors, and trade associations[1] seeking to recover damages for economic harm suffered by the City "associated with the manufacture, marketing, promotion, and sale of firearms which are unreasonably dangerous under Louisiana law." Specifically, the City's petition alleges that "[a]ctions by defendants have caused the city to pay out large sums of money to provide services including but not limited to necessary police, medical, and emergency services, health care, police pension benefits and related expenditures, as well as to have lost substantial tax revenues due to lost productivity."
Subsequent to the filing of the City's original petition, the legislature enacted Act 291 of 1999, effective June 11, 1999. Section 1 of the Act purports to preclude suits from being filed by any political subdivision or local governmental authority against any firearms or ammunition manufacturer, trade association, or dealer for damages relating to the lawful design, manufacture, marketing, or sale of firearms or ammunition and reserves this power to the state.[2] Section 2 of Act 291 provides that its provisions "shall be applicable *7 to all claims existing or actions pending on its effective date and all claims arising or actions filed on and after its effective date."
The legislature also enacted Acts 1999, No. 1299, effective July 12, 1999, which was codified as La. R.S. 9:2800.60. Section 1 of the Act provides that the Louisiana Products Liability Act was not designed to impose liability on a manufacturer or seller for the improper use of a properly designed and manufactured product, and that the manufacture and sale of firearms and ammunition by duly licensed manufacturers and dealers is lawful activity and is not unreasonably dangerous.[3] Section 2 of Act 1299 states that its provisions are "intended to clarify the provisions of the Louisiana Products Liability Act, and therefore are remedial in nature and shall apply to all actions or claims pending on or filed after the effective date of this Act."
Subsequent to the effective dates of these Acts, defendants filed peremptory *8 exceptions, contending plaintiffs have no right of action under La. R.S. 40:1799 and no cause of action under La. R.S. 9:2800.60. In response, the City challenged the constitutionality of these statutes on several grounds. Keith Ignatik, an individual and private plaintiff in a pending action filed on July 2, 1999 and captioned Ignatik v. Tummarello, No. 99-10781, Civil District Court for the Parish of Orleans, was granted leave to intervene in the City's suit "for the purpose of asserting certain constitutional rights and making certain constitutional challenges."
After a contradictory hearing, the trial court denied defendants' exceptions, finding that La. R.S. 40:1799 and La. R.S. 9:2800.60 are unconstitutional.[4] Initially addressing defendants' exception of no right of action, the trial court found that Act 291 does not deprive plaintiffs of a right of action. First, the trial court found that plaintiffs have a vested right to bring suit under the City's home rule charter and, therefore, La. R.S. 40:1799, enacted by Act 291, cannot be retroactively applied to plaintiffs' suit. The trial court next found that the retroactivity provision of Act 291 is an unconstitutional special law because it implicitly "singles out" the City's pending lawsuit, which is "the one and only lawsuit filed against gun manufacturers in the State of Louisiana." The trial court also concluded that La. R.S. 40:1799 is a substantive law because it changes the rights of a political subdivision to file suit against a firearms manufacturer; therefore, because the legislation divests the City of the right found in its home rule charter to initiate litigation and changes pre-existing law, the trial court found it unconstitutional. Finally, the trial court found that retroactive application of La. R.S. 40:1799 would impair plaintiffs' rights under the United States and Louisiana Constitutions, including their due process and equal protection rights and Mr. Ignatik's right as a private citizen to assert the constitutional protections of the Contracts Clause and the Bill of Attainder Clause.
Turning to defendants' exception of no cause of action, the trial court found that plaintiffs have a cause of action against manufacturers and sellers of firearms in spite of the enactment of La. R.S. 9:2800.60. The trial court reasoned that plaintiffs stated a cause of action for design defects[5] and for inadequate warning[6] under prior Louisiana products liability law. The trial court found that because plaintiffs have a vested right in their cause of action, La. R.S. 9:2800.60 cannot be applied retroactively to divest that right. The trial court further found that La. R.S. 9:2800.60 is an unconstitutional special law and cannot be retroactively applied because it is substantive in nature. Finally, the trial court found that retroactive application of La. R.S. 9:2800.60 would violate constitutionally mandated separation of powers and impair plaintiffs' rights under *9 the United States and Louisiana Constitutions, including their due process and equal protection rights and Mr. Ignatik's right as a private citizen to assert the constitutional protections of the Contracts Clause and the Bill of Attainder Clause.
Defendants have appealed the district court's judgment directly to this court pursuant to La. Const. art. V, § 5(D).[7]

LAW AND DISCUSSION
At the outset, we note that defendants have not assigned as error, briefed, or argued the trial court's rulings relating to the rights of the private plaintiff, Keith Ignatik. At oral argument before this court, counsel for defendants stated that this appeal did not concern the trial court's ruling with respect to Mr. Ignatik. Therefore, the issues relating to Mr. Ignatik's rights are not before us and nothing in this opinion should be interpreted to affect his rights.
The issue we must first decide is whether La. R.S. 40:1799, which provides that the governing authority of a political subdivision is precluded from bringing suit against firearms or ammunition manufacturers, trade associations, or dealers seeking damages for losses resulting from the lawful design, manufacture, marketing or sale of firearms or ammunition, can be retroactively applied to the City's suit filed prior to its effective date. The City argues that retroactive application of the statute, which was enacted by Act 291, would destroy its vested right to sue defendants and therefore violate its due process rights guaranteed by the Fourteenth Amendment. The City also argues that allowing Act 291 to act as grounds for the dismissal of its suit would violate the federal Equal Protection Clause, the Contract Clause, and the prohibition against bills of attainder. Furthermore, the City contends that retroactive application of the statute would violate its vested right to sue in all matters, a right which stems from its broad home rule powers. In response, defendants argue that the political subdivisions of the state do not enjoy constitutional protections under Article I of the Louisiana Constitution, or the Due Process and Equal Protections Clauses of the United States Constitution. Defendants assert the state enacted La. R.S. 40:1799 in an exercise of its police power, which is a limitation on the City's home rule power. Accordingly, defendants maintain the City lacks a right of action to pursue this suit.
The legislature is free, within constitutional confines, to give its enactments retroactive effect. St. Paul Fire & Marine Ins. Co. v. Smith, 609 So.2d 809, 816 (La.1992). A court must defer to the legislature's intent when determining whether a statute should be applied retroactively. La. C.C. art. 6; Reichert v. State, Dep't of Transp. & Dev., 96-1419, p. 6 (La.5/20/97), 694 So.2d 193, 199; Stelly v. Overhead Door Co. of Baton Rouge, 94-0569, p. 7 (La.12/8/94), 646 So.2d 905, 911. Civil Code Article 6, entitled "Retroactivity of laws," provides:
In the absence of contrary legislative expression, substantive laws apply prospectively only. Procedural and interpretative laws apply both prospectively and retroactively, unless there is a legislative expression to the contrary.
A related statute, La. R.S. 1:2, provides:
No Section of the Revised Statutes is retroactive unless it is expressly so stated. *10 Although this statute may appear to conflict with La. C.C. art. 6, La. R.S. 1:2 has been limited to apply only to substantive and not procedural or interpretive legislation and the two provisions are therefore generally construed as being co-extensive. Sudwischer v. Estate of Hoffpauir, 97-0785, p. 8 (La.12/12/97), 705 So.2d 724, 728; Keith v. U.S. Fid. & Guar. Co., 96-2075, p. 5 (La.5/9/97), 694 So.2d 180, 183; Manuel v. Louisiana Sheriff's Risk Mgmt. Fund, 95-0406, p. 8 (La.11/27/95), 664 So.2d 81, 85; Stelly v. Overhead Door Co. of Baton Rouge, 94-0569, pp. 6-7 (La.12/8/94), 646 So.2d 905, 911; St. Paul Fire & Marine Ins. Co. v. Smith, 609 So.2d 809, 816 (La. 1992).
Article 6 requires a two-fold inquiry:
First, we must ascertain whether in the enactment the legislature expressed its intent regarding retrospective or prospective application. If the legislature did so, our inquiry is at an end. If the legislature did not, we must classify the enactment as substantive, procedural or interpretive.
Cole v. Celotex Corp., 599 So.2d 1058, 1063 (La.1992); St. Paul Fire & Marine, 609 So.2d at 816. However, because the principle has constitutional implications under the Due Process and Contract Clauses of both the United States and Louisiana Constitutions, even where the legislature has expressed its intent to give a law retroactive effect, that law may not be applied retroactively if it would impair contractual obligations or disturb vested rights. See Keith v. U.S. Fidelity & Guar., 96-2075, pp. (La.5/9/97), 694 So.2d 180, 183; Rousselle v. Plaquemines Parish Sch. Bd., 93-1916, p. 11 (La.2/28/94), 633 So.2d 1235, 1244; Segura v. Frank, 93 1271, pp. 8-9 (La.1/14/94), 630 So.2d 714, 721; St. Paul Fire & Marine, 609 So.2d at 816 n. 11; Lott v. Haley, 370 So.2d 521, 523 (La. 1979). See also 2 A.N. YIANNOPOULOS, LOUISIANA CIVIL LAW TREATISE, § 10 (3d ed. 1991) ("Retroactive application of new legislation is constitutionally permissible only if it does not result in impairment of the obligation of contracts or in divestiture of vested rights.").
The first step under Article 6, determining whether the legislature expressly provided for retroactive application, is resolved by examining the specific language contained in the Act. St. Paul Fire & Marine, 609 So.2d at 816-17. Act 291 contains a clear and unmistakable expression of legislative intent regarding its intended temporal effect. Section 2 of the Act states that its provisions "shall be applicable to all claims existing or actions pending on its effective date and all claims arising or actions filed on and after its effective date." By adopting this Section, the legislature has clearly indicated its intent that this Act be applied both retroactively and prospectively. Because the City's action was pending, i.e., "subject to judicial scrutiny," see Segura v. Frank, 93-1271 at p. 19, 630 So.2d at 727, on the effective date of the Act, we must conclude that the legislature intended that Act 291 be applied to plaintiffs' claims. Because the legislature plainly intended that Act 291 be retroactively applied, its provisions will be applied to the City's suit unless doing so would violate the constitutional prohibitions against impairment of contractual obligations or disturbance of vested rights.[8]
*11 The legislature's power to enact retroactive laws is limited by the Due Process and Contract Clauses of the Federal and State Constitutions. U.S. Const. Amend. XIV, § 1; U.S. Const. Art. I, § 10[1]; La. Const. art. I, § 2, La. Const. art. 1, § 23. See also Segura, 93-1271 at p. 19-20, 630 So.2d at 728, and cases cited therein. In the instant case, however, the City, as a political subdivision of the state, is not entitled to assert the protections afforded by these clauses against the retroactive application of La. R.S. 40:1799. Williams v. Mayor & City Council of Baltimore, 289 U.S. 36, 40, 53 S.Ct. 431, 432, 77 L.Ed. 1015 ("A municipal corporation, created by a state for the better ordering of government, has no privileges or immunities under the federal constitution which it may invoke in opposition to the will of its creator."); Board of Comm'rs of Orleans Levee Dist. v. Department of Natural Resources, 496 So.2d 281, 287 (La.1986) (on rehearing) ("Article I, the Declaration of Rights Article, protects the rights of individuals against unwarrantable government action and does not shield state agencies from law passed by the people's duly elected representatives."); State ex rel. Kemp v. City of Baton Rouge, 215 La. 315, 40 So.2d 477, 482 (1949) ("It is the settled jurisprudence that counties and municipalities are creatures of the State, established for the purpose of providing effective government with functions, powers, duties and obligations delegated or imposed by the State and that there is nothing in the Fourteenth Amendment of the Federal Constitution or any other provision of the Constitution of the United States which would prohibit the State from making any change of such functions, powers and obligations."). See also Palomar Pomerado Health Sys. v. Belshe, 180 F.3d 1104, 1107 (9th Cir.1999) ("[P]olitical subdivisions of a state may not challenge the validity of a state statute in a federal court on federal constitutional grounds."); Harris v. Angelina County, Tex., 31 F.3d 331, 338 (5th Cir.1994) ("[S]tate subdivisions, such as counties and municipalities, cannot assert constitutional claims in federal court against their creator, the state itself, or other state political subdivisions."); 2 DENNIS JENSEN & GAIL A. O'GRADNEY, MCQUILLIND. MUNICIPAL CORPORATIONS § 4.17 at 51 (3rd ed. 1996) ("A municipal corporation has no privileges or immunities under the federal Constitution which it may invoke against state legislation affecting it.").
The Contract Clause, Article I, Section 10[1] of the United States Constitution, provides:
No state shall ... pass any Bill of Attanider, ex post facto Law, or Law impairing the Obligation of Contracts....
Article I, Section 23 of the Louisiana Constitution of 1974, provides:
No bill of attainder, ex post facto law, or law impairing the obligation of contracts shall be enacted.
These constitutional provisions are "virtually identical" and "substantially equivalent." Segura, 93-1271 at p. 20, 630 So.2d at 728.
In Rousselle v. Plaquemines Parish Sch, Bd., 93-1916 (La.2/28/94), 633 So.2d 1235, this court explained that the constitutional prohibitions found in the Contract Clauses of the Federal and State Constitutions do not protect political subdivisions *12 of the state from the passage of retroactive laws impairing their rights with respect to transactions already passed because these protections are for the benefit of private citizens. In that case, this court considered a retroactive application of an amendment to the teacher tenure laws and its effect on a pre-existing contract between a school principal and a school board. Rouselle, a school principal, sought to have a 1991 amendment to the teacher tenure laws, an amendment which increased his job protection, apply to his 1990 promotional contract with the school board. The court first concluded that, as administrators of public education, school boards are agencies of the state. As such, the school boards must comply with the teacher tenure laws which define the status of Louisiana's public school teachers and outline the procedures a school board must follow to discharge them. After examining the language of the amendment, the court concluded the legislature expressly provided for its retroactive effect. The school board argued against retroactive application, contending retroactive application would unconstitutionally impair its contractual rights. The court rejected this argument and held retroactive application of the amendment was permissible because the school board, as a public agency of the state, was not protected by the constitutional prohibition against impairment of contracts. The court stated:
The retroactive application of Act 779 to Rousselle's contract does not unconstitutionally impair the School Board's contractual rights. The School Board is an agency of the state and is aware of the legislature's broad and pervasive power to regulate public education. Accordingly, it is not protected by the constitutional prohibition against the legislature enacting laws which impair the obligation of contracts. The inhibitions found in Article I, § 23 of the Constitution are protections for the citizens and not for the State. This state may constitutionally pass retrospective laws waiving or impairing its own rights or those of its subdivisions, or imposing upon itself or its subdivisions new liabilities with respect to transactions already passed, as long as private rights are not infringed. Thus, as the School Board is not protected by the contract clause prohibitions of the state or federal constitutions, there is no need to employ the four-step contract clause analysis to determine whether Act 779 unconstitutionally impairs its contractual obligations.
Id. at 1246-47 (citations and footnotes omitted) (emphasis added). See also City of Safety Harbor v. Birchfield, 529 F.2d 1251, 1254 (5th Cir.1976) ("Ever since the Supreme Court's landmark decision in Dartmouth College v. Woodward, 17 U.S. (4 Wheat.) 518, 4 L.Ed. 629 (1819), it has been apparent that public entities which are political subdivisions of states do not possess constitutional rights, such as the right to be free from state impairment of contractual obligations, in the same sense as private corporations or individuals."); Olivedell Planting Co. v. Town of Lake Providence, 217 La. 621, 47 So.2d 23, 27 (1950) ("The provisions of our Constitution relating to the impairment of the obligations of contracts only apply to contracts or vested rights of individuals or private corporations.").[9]
*13 In light of the established principle that the Contract Clauses of the Federal and State Constitutions do not apply to protect municipalities of the state from retroactive legislation, we must conclude that these clauses would not be violated by a retroactive application of La. R.S. 40:1799 in this case. Moreover, the City, as a creature of the state, is not entitled to assert the constitutional prohibition against bills of attainder against its creator.[10] The trial court was therefore correct in concluding that the City does not have the right to assert the constitutional protections of the Contract Clause and the prohibition against bills of attainder.
Similarly, the City, as a political subdivision of the state rather than a "person," is without the protections of La. Const. art. I, the Declaration of Rights Article, or the Due Process and Equal Protection Clauses of the United States Constitution. The jurisprudence has long held that municipalities are not entitled to Fourteenth Amendment protections. Williams v. Mayor & City Council of Baltimore, supra; Risty v. Chicago, R.I. & P. Ry. Co., 270 U.S. 378, 390 46 S.Ct. 236, 240 (1926) ("The power of the state and its agencies over municipal corporations within its territory is not restrained by the provisions of the Fourteenth Amendment."); Warren County, Miss. v. Hester, 219 La. 763, 54 So.2d 12, 18 (1951), cert. denied, 342 U.S. 877, 72 S.Ct. 167, 96 L.Ed. 659 (1951) ("[I]t is plain that the Fourteenth Amendment of the Federal Constitution, declaring that no state shall deprive any person of life, liberty or property without due process of law nor deny any person within its jurisdiction the equal protection of the laws, is utterly without application to the political subdivisions of a state, which cannot be viewed as a person within the purview of the constitutional provision."); State ex rel. Kemp v. City of Baton Rouge, 215 La. 315, 40 So.2d 477 (1949), supra; 2 DENNIS JENSEN & GAIL A. O'GRADNEY, MCQUILLIN MUNICIPAL CORPORATIONS § 4.20 at 60 (3rd ed. 1996) ("Municipal corporations are political subdivisions of the state, created for exercising any governmental powers of the state as may be entrusted to them and they may not assert the protection of the due process clause against action of the state government."). See also City of Newark v. New Jersey, 262 U.S. 192, 43 S.Ct. 539, 67 L.Ed. 943 (1923); City of Trenton v. New Jersey, 262 U.S. 182, 43 S.Ct. 534, 67 L.Ed. 937 (1923); City of New York v. Richardson, 473 F.2d 923 (2nd Cir.1973); Yonkers Comm'n on Human Rights v. City of Yonkers, 654 F.Supp. 544 (S.D.N.Y. 1987); Bartels v. Roussel, 303 So.2d 833 (La.App. 1 Cir.1974); Penny v. Bowden, 199 So.2d 345 (La.App. 3 Cir.1967). Correspondingly, Article I of the Louisiana Constitution protects only the rights of "persons" and does not protect government entities against unjust government action. See Board of Comm'rs, supra.
The City of New Orleans is not protected by the constitutional prohibitions against impairment of contractual obligations or disturbance of vested rights. Therefore, the retroactive application of La. R.S. 40:1799 to its lawsuit is not precluded by due process or equal protection considerations, the Contract Clauses or the Bill of Attainder Clauses of either the Federal or State Constitution.
The City is not without constitutional protection, however. Although the Declaration of Rights Article of the Louisiana Constitution does not protect government *14 entities against unjust government action, the protection of these entities is provided for in the Local Government Article. Board of Com'rs, supra. The Local Government Article, Article VI, gives home rule entities such as the City broad home rule authority by which it has the "freedom and flexibility to manage its own local affairs without undue legislative influence." Miller v. Oubre, 96-2022, p. 9 (La.10/15/96), 682 So.2d 231, 236.
The City of New Orleans is governed by the provisions of a home rule charter enacted prior to the 1974 Louisiana Constitution. These pre-existing home rule charters were continued, and essentially constitutionalized, City of New Orleans v. Board of Comm'rs of Orleans Levee Dist., 93-0690, p. 8 (La.7/5/94), 640 So.2d 237, 244, by La. Const. art. VI, § 4. This section provides:
Every home rule charter or plan of government existing or adopted when this constitution is adopted shall remain in effect and may be amended, modified, or repealed as provided therein. Except as inconsistent with this constitution, each local governmental subdivision which has adopted such a home rule charter or plan of government shall retain the powers, functions, and duties in effect when this constitution is adopted. If its charter permits, each of them also shall have the right to powers and functions granted to other local governmental subdivisions.
Although "`home rule' does not mean complete autonomy," Miller v. Oubre, 96-2022 at p. 9, 682 So.2d at 236, this court has recognized that, in affairs of local concern, a home rule charter government possesses "powers which within its jurisdiction are as broad as that of the state, except when limited by the constitution, laws permitted by the constitution, or its own home rule charter." Francis v. Morial, 455 So.2d 1168, 1171 (La.1984).
Article VI also fosters local self-government by giving home rule entities "the discretion to deploy their powers and functions on the local level, which may not be revoked, changed or affected by law unless necessary to prevent an abridgement of the reasonable exercise of the state's police power." Id. La. Const. art. VI, § 6 provides:
The legislature shall enact no law the effect of which changes or affects the structure and organization or the particular distribution and redistribution of the powers and functions of any local governmental subdivision which operates under a home rule charter.
This Section was added to Article VI to protect home rule governments from unwarranted interference in their internal affairs by state government. Francis, 455 So.2d at 1171.
To ensure that the powers granted to home rule governments would not be used to deprive the state government of its inherent powers, Section 9(B) was added to Article VI as a counterbalance. Id. at 1172. This section, entitled "Limitations of Local Government Subdivisions," provides:
Notwithstanding any provision of this Article, the police power of the state shall never be abridged.
This provision was adopted "as a principle of harmonizing the replete home rule powers granted local governments with a basic residuum of the state's power to initiate legislation and regulation necessary to protect and promote the vital interests of its people as a whole." City of New Orleans, 93-0690 at p. 20, 640 So.2d at 249. This section has also been characterized as "a positive reaffirmance of the supremacy of *15 the state's police power." Lafourche Parish Council v. Autin, 94-0985, p. 18 (La.12/9/94), 648 So.2d 343, 357.
Although the police power of the state is best defined on a case by case basis, it has been generally described as the state's "inherent power to govern persons and things, within constitutional limits, for promotion of general health, safety, welfare, and morals." City of New Orleans v. Board of Directors of Louisiana State Museum, 98-1170, p. 11 (La.3/2/99), 739 So.2d 748, 757. See also Polk v. Edwards, 626 So.2d 1128, 1142; Francis, 455 So.2d at 1172. The police power extends only to measures that are reasonable. City of New Orleans v. Board of Directors of Louisiana State Museum, 98-1170 at p. 11, 739 So.2d at 757; Francis, 455 So.2d at 1172. A measure taken under the state's police power is reasonable when the action is, under all the circumstances, reasonably necessary and designed to accomplish a purpose properly falling within the scope of the police power. City of New Orleans v. Board of Directors of Louisiana State Museum, 98-1170 at p. 11, 739 So.2d at 757. Thus, to sustain an action under the state's police power, courts must be able to see that its operation tends in some degree to prevent an offense or evil or otherwise to preserve public health, safety, welfare or morals. Id. Further, an exercise of the state's police power "does not justify an interference with constitutional rights which is entirely out of proportion to any benefit redounding to the public." City of Baton Rouge v. Williams, 95-0308, p. 6 (La.10/16/95), 661 So.2d 445, 449 (quoting Francis, 455 So.2d at 1173).
In the instant case, defendants argue that La. R.S. 40:1799 was enacted in the interest of public safety and welfare and pursuant to the police power of the state. They reason that the City's suit is therefore barred as an abridgement of the state's police power. We agree.
The City's broad authority under the Home Rule Charter of 1954 and its predecessor, Act 159 of 1912, allows it to "sue and defend, plead and be impleaded, in all courts and places and in all matters and proceedings." It was pursuant to these powers that the City filed the instant lawsuit. As this court has previously recognized, the powers of home rule entities are limited by the police power of the state. City of New Orleans v. Board of Directors of Louisiana State Museum, 98-1170 at p. 12, 739 So.2d at 757. Therefore, under the principles set forth in Article VI as explained above, the City may freely exercise its power to sue in all matters and proceedings unless this power conflicts with a valid exercise of the state's police powers.
The statute at issue, La. R.S. 40:1799, provides that the governing authority of a political subdivision is precluded and preempted from bringing suit against any firearms or ammunition manufacturers, trade associations, or dealers seeking damages for injury, death, or loss or other injunctive relief resulting from the lawful design, manufacture, marketing, or sale of firearms of ammunition and reserves the authority to bring such actions exclusively to the state. This statute therefore purports to take away any right of action that a political subdivision might have previously had to bring suit against the firearms industry seeking damages or injunctive relief relating to the lawful design, manufacture, marketing, or sale of firearms or ammunition. If La. R .S. 40:1799 is constitutional and applicable to the City's suit, then the plain language of its provisions clearly mandates the dismissal of the City's suit.
It is beyond question that this challenged statute was passed in the interest *16 of the public as a whole and as an exercise of the state's police power. A reading of the legislative history of Act 291 indicates that its provisions were enacted to make it clear that the regulation of firearms is exclusively a state function. See Minutes of the Senate Committee on Judiciary A, May 18, 1999, pp. 18-21. Clearly, state regulation of the lawful design, manufacture, marketing, or sale of firearms or ammunition is of vital interest to the citizens of Louisiana. Equally clear is the fact that consistent, exclusive state-wide regulation of the firearms industry tends in a great degree to preserve the public safety and welfare. A scheme allowing several municipalities to file suits effectively attempting to regulate the firearms industry in different ways and in different degrees could conceivably threaten the public safety and welfare by resulting in haphazard and inconsistent rules governing firearms in Louisiana. Moreover, this court has consistently recognized that the legislature's authority to regulate different aspects of the firearms industry constitutes a legitimate exercise of the police power. See State v. Sandifer, 95-2226 (La.9/5/96), 679 So.2d 1324; State v. Hamlin, 497 So.2d 1369 (La.1986); State v. Amos, 343 So.2d 166 (La.1977). Considering all the circumstances, we therefore conclude that Act 291 of 1999 constitutes a reasonable exercise of the state's police power.
The statute at issue is aimed at suits, such as the one filed by the City in the instant case, that attempt to indirectly regulate the firearms industry on the local level. The petition filed by the City in this case alleges that the City was damaged because defendants' firearms
are sold without the means to prevent their being fired by unauthorized users, without adequate warnings which would prevent such shootings by alerting users of the risks of hand-guns and of the importance of proper storage of handguns, and without other safety features and warnings which would prevent shootings by unauthorized users. Defendants distribute their handguns in a manner which affords easy access to unauthorized users including criminals.... At all pertinent times the defendants have been able to manufacture, market, sell and/or promote firearms which prevent shootings by unauthorized users, including firearms which incorporate safety devices intended to prevent unauthorized users from firing firearms if and when they come into possession of them. However, defendants have failed to do so.... Defendants were... aware of safety devices, warnings, and other measures which would prevent and decrease these dangers. Defendants failed to remedy these deficiencies in their handguns, warnings, instructions, promotions and advertising; failed to adequately warn customers of these dangers; and failed to inform customers or distributors or a retailers of safety devices and measures which could prevent or decrease these dangers and failed to determine whether safety devices were feasible or effective.
As evidenced by the language in the City's petition, this lawsuit constitutes an indirect attempt to regulate the lawful design, manufacture, marketing and sale of firearms.[11] As such, it squarely conflicts *17 with a reasonable exercise of the state's police power and must be dismissed on the grounds that the City lacks a right of action to pursue this suit. As explained above, the fact that the statute was enacted subsequent to the filing of the City's suit is of no moment as the City lacks the protections of La. Const. art. I, the Fourteenth Amendment, and the Contract Clauses of both the Federal and State Constitutions and the continuation of the suit abridges the police power of the state in contravention of La. Const. art. VI, § 9(B).
In addition to the constitutional arguments discussed above, the City also argues that the retroactivity provision of Act 291 is unconstitutional on the grounds that it is a prohibited local or special law. We disagree with this argument.
The Louisiana Constitution prohibits the legislature from passing any local or special law which deals with any of the subjects enumerated in La. Const. art. III, § 12(A). The prohibition against these laws "is intended to reflect a policy decision that legislative resources and attention should be concentrated upon matters of general interest, and that purely local matters should be left to local governing authorities." Kimball v. Allstate Ins. Co., 97-2885, p. 4 (La.4/14/98), 712 So.2d 46, 50 (quoting H. Alston Johnson III, Legislative Process, 36 La. L. Rev. 549, 549 (La. 1976)). The prohibition against local and special laws, however, is not intended to restrict the legislature's ability to adopt legislation under its police power for the promotion of the health, safety, welfare and morals of the citizens of the state. Polk v. Edwards, 626 So.2d 1128, 1136 (La.1993). An analysis of whether a statute constitutes an unconstitutional local or special law begins with a determination of whether the law is, in fact, local or special. Kimball, 97-2885 at p. 4, 712 So.2d at 50. If it is, then only then must we decide whether the law concerns a subject listed in La. Const. art. III, § 12(A). Id.; Polk, 626 So.2d at 1133 ("[I]f the legislation is general rather than local or special, neither the prohibitions regarding the enumerated subjects nor the requirement for local advertisement apply.").
A law is local if it operates only in a particular locality or area without the possibility of extending its coverage to other localities or areas should the requisite criteria exist or come to exist in the new locality or area. State v. Brazley, 00-0923, p. 4 (La.11/28/00), 773 So.2d 718, 721; Kimball, 97-2885 at p. 4, 712 So.2d at 51. Thus, a law is general, and not local, if its operation can extend to the whole territory of the state. Kimball, 97-2885 at p. 4, 712 So.2d at 51. Additionally, a law is not local even though its enforcement may be restricted to a particular locality or area where the conditions under which it operates simply do not exist in other localities. Kimball, 97-2885 at p. 5, 712 So.2d at 51 (citing City of New Orleans v. Treen, 431 So.2d 390, 394 (La.1983) ("[A] law may be *18 a general law even though limited to one locality if it is general in its terms and its coverage can extend to other areas should the requisite criteria exist there as well or if its operation is limited to a locality through the effect of a reasonable classification such as population, size or physical characteristics and not solely through the specific designation of a certain parish or parishes.")). Furthermore, a law whose application and immediate effect is restricted to a particular locality is not local if it affects persons throughout the state or operates on a subject in which the people at large are interested. Id.; Livingston Downs Racing Ass'n, Inc. v. State, 96-2890, p. 12 (La.12/2/97), 705 So.2d 149, 156; Louisiana Paddlewheels v. Louisiana Riverboat Gaming Comm'n, 94-2015, p. 7 (La.11/30/94), 646 So.2d 885, 889; Polk, 626 So.2d at 1134. A law is special if it operates upon and affects only a fraction of the persons or a portion of the property encompassed by a classification, granting privileges to some while denying them to others. Kimball, 97-2885 at p. 6, 712 So.2d at 52. In contrast to a law that is local or special, a law that is general operates equally and uniformly upon all persons brought within its confines or operates equally upon all of a designated class which has been founded upon a reasonable classification. Id.
Applying the above principles, we conclude that both Section 1 and Section 2 of Act 291 operate as general laws rather than local or special laws. Section 1, which comprises the text of La. R.S. 40:1799, is not a local law as its operation extends to the governing authorities of all political subdivisions. Additionally, this section operates on a subject in which the people at large are interested and it is therefore not a local law. Similarly, Section 1 is not a special law since it affects all the local governing units of the state without granting privileges to some while denying them to others. Section 1 is clearly a general law as it operates equally throughout the state upon all political subdivisions wishing to file suit against the firearms industry.
Section 2 of the Act deals with retroactivity and provides that its provisions shall be applicable to all claims existing or actions pending on its effective date and all claims arising or actions filed on and after its effective date. Like Section 1, Section 2 operates as a general law as it operates uniformly upon all local governing units that desire to file suits contemplated by La. R.S. 40:1799. This section is not a local law because, by its very terms, it applies to all localities in the state who have pending actions that are now subject to exceptions of no right of action pursuant to La. R.S. 40:1799. The fact that the City is the only political subdivision that has a lawsuit of this type pending against the firearms industry does not make Section 2 a local law since the conditions upon which Section 2 operates, all governing authorities of a political subdivision that have actions pending on the effective date of the Act, simply do not prevail in other localities. Moreover, Section 2 is not a special law because its privileges and concomitant restrictions affect every entity within its classification, political subdivisions with pending suits against firearms or ammunition manufacturers, trade associations or dealers, equally. Every political subdivision that had a suit similar to that of the City's pending on the effective date of Act 291 is subject to the provisions of La. R.S. 40:1799. Again, the fact that the City is the only political subdivision with such a pending suit does not make the law a special one since the disabilities or burdensome conditions imposed by Section 2 apply equally to all political subdivisions and that classification is reasonable. Furthermore, that Section 2 is a general law is *19 also supported by the fact that it operates on a subject in which the people at large are interested. This conclusion is also buttressed by the fact that the prohibition against local or special laws is not intended to restrict the legislature's exercise of its police power.
Finally, the City argues that application of Act 291 as a basis for sustaining defendants' exception of no right of action violates the constitutional principle of separation of powers. We reject the City's argument that, in enacting Act 291, the legislature exercised power properly belonging to the judicial branch of government. The legislature has always enjoyed the power to create new rights and abolish old ones as long as it does not interfere with vested rights. See, e.g., Reeder v. North, 97-0239, p. 9 (La.10/21/97), 701 So.2d 1291, 1296; Crier v. Whitecloud, 496 So.2d 305, 310 (La.1986). As we have already explained, the legislature's decision to abolish a political subdivision's right of action to sue firearms or ammunition manufacturers, trade associations or dealers for damages or injunctive relief resulting from or relating to the lawful design, manufacture, marketing, or sale of firearms or ammunition did not interfere with any vested rights belonging to the City. As such, the legislature acted entirely within its province when it enacted the law at issue.
For all of the foregoing reasons, we conclude the district court erroneously declared La. R.S. 40:1799 unconstitutional as applied to the City's suit. The defendants' exception of no right of action should have been sustained and, because the grounds of defendants' objection pleaded by the peremptory exception of no right of action cannot be removed by amendment of the petition, plaintiffs' suit should be dismissed. In light of this court's conclusion that the City is without a right of action to pursue this suit, we need not address the constitutionality of Act 1299 of 1999, codified as La. R.S. 9:2800.60. The district court's declaration of unconstitutionality as to this statute as it affects the rights of the City is therefore vacated.

DECREE
For the reasons explained above, defendants' exception of no right of action is sustained and plaintiffs' action is dismissed. The district court's conclusion as to the constitutionality of La. R.S. 40:1799 is reversed. The district court's conclusion relating to defendants' exception of no cause of action and the constitutionality of La. R.S. 9:2800.60 is vacated and set aside.
REVERSED IN PART; VACATED IN PART; and RENDERED.
CALOGERO, C.J., dissents and assigns reasons.
JOHNSON, J., dissents for reasons assigned by CALOGERO, C.J.
LEMMON, J., concurs and assigns reasons.
CALOGERO, Chief Justice, dissenting.
I dissent from the majority's conclusion that continuation of the City's lawsuit abridges the police power of the state in contravention of La. Const. art. VI, § 9(B). The majority reaches this result by concluding that the City's lawsuit is an indirect attempt to regulate the lawful design, manufacture, marketing and sale of firearms. Further, the majority concludes that 1999 La. Acts 291 (hereinafter "Act 291") was passed as a valid exercise of the state's police power to make it clear that regulation of firearms is exclusively a state function. I disagree with both conclusions.
First, the City's lawsuit does not attempt in any way to regulate the firearms *20 industry. It is merely a suit for damages. To conclude otherwise would be to say that an injured plaintiff is attempting to regulate the automobile industry when he sues to recover damages caused by faulty brakes, or that a survivor is attempting to regulate the airline industry when he sues the airline because his spouse was killed in an airplane crash. The City does not request any relief in the form of a mandatory injunction that would require gun manufacturers to change their way of doing business; rather, the City is ostensibly only seeking damages in accordance with causes of action created by products liability statutes in existence at the time the lawsuit was filed.
According to Black's Law Dictionary, Fourth Edition (1968), to "regulate" means "to fix, establish or control" or "to direct by rule or restriction." The City's lawsuit does neither. The City's goal is the collection of monies to compensate it for damages resulting from the actions of defendants nothing more, nothing less.
Second, Act 291 is not a valid exercise of the state's police power sufficient to trump the City's powers enumerated in its Home Rule Charter, which pre-dated the La. Constitution of 1974. For the same reasons stated above, Act 291 is not an attempt to regulate the firearms industry (which likely is within the state's police power), but rather is only a legislative assertion of who has the right of action to sue for damages in certain cases. Act 291 was not passed in response to a pressing public need or a vital public interest. Rather, it was passed in response to the City's lawsuit with the obvious intent to halt the City's litigation.
Even if Act 291 constituted a "regulation," it does not rise to the level of a valid exercise of the state's police power sufficient to override the powers granted to the City of New Orleans in its Home Rule Charter, which pre-dated the 1974 Louisiana Constitution. In City of New Orleans v. Bd of Com'rs of Orleans Levee Dist., 93-0690, p. 27 (La.7/5/94), 640 So.2d 237, 252, we discussed the state-local government relationship contemplated by Article VI of the La. Const. of 1974, which "strikes a balance in favor of home rule that calls for a corresponding adjustment in judicial attitude." We went on to caution that "home rule abilities and immunities are to be broadly construed, and any claimed exception to them must be given careful scrutiny by the courts." Id. at 252. Act 291 as a claimed exception to the powers of the City's Home Rule Charter does not pass the careful scrutiny that is required in this case.
While the state's police powers are admittedly broad, they are limited to such measures "as are reasonable." City of New Orleans v. Bd of Dir. of LSM, 98-1170, p. 11 (La.3/2/99), 739 So.2d 748, 757. In determining what is reasonable, we have held that "the action taken must be, under all the circumstances reasonably necessary and designed to accomplish a purpose properly falling within the scope of police power." Accordingly, "to sustain an action under the police power, the court must be able to see that its operation tends in some degree to prevent an offense or evil or otherwise to preserve public health, safety, welfare or morals." Id. at 757; Francis v. Mortal, 455 So.2d 1168, 1173 (La.1984). The first question to be answered in determining whether the state police power has been abridged by a home rule municipality's local law is whether the local law conflicts with an act of the state legislature that is necessary to protect the "vital interest" of the state as a whole. City of Baton Rouge v. Williams, 95-0308, pp. 5-6 (La.10/16/95), 661 So.2d 445, 449; City of New Orleans v. Bd of Com'rs, supra.
*21 I simply do not see where the State, in reserving for itself the exclusive right to recover against the firearms industry for damages for injury, death, or loss, is attempting to prevent an offense or evil or is attempting to preserve public health, safety, welfare or morals. I also do not agree that the Legislature acted to protect a vital interest of the state. In fact, quite the opposite could be argued in that the State is in effect hurting the public welfare by restricting the public's right to recover damages for injuries resulting from the act of another, as well as cloaking an entire industry with immunity from suit by certain plaintiffs.
I acknowledge that these conclusions leave unanswered a myriad of legal issues raised in this litigation. However, as I write as a dissenter and not as a member of the majority, I choose to pretermit the remaining legal issues raised by my conclusions, such as the effect of 1999 La. Acts 1299 (La. R.S. 9:2800.60) on the City's lawsuit.
LEMMON, J., Concurring

Exercise of Police Power
Although agreeing with the majority in the dismissal of the action on the exception of no right of action, I also agree with the dissenters that La. Acts 1999, No. 291, enacting La.Rev.Stat. 40:1799 (after the filing of the suit at issue), was not a regulation of firearms, but was a regulation of tort actions, and did not constitute the exercise of the police power of the state.
La.Rev.Stat. 40:1796, enacted in 1985 (before the filing of the suit at issue), did regulate firearms by preempting local governments from enacting any legislation or regulation, concerning the sale, purchase, possession, ownership, transfer, transportation, license or registration of firearms, that was more restrictive than state law. The 1998 suit by the City did not violate Section 1796, because the suit was not an ordinance or a rule or regulation concerning firearms. The suit was an action for tort damages caused to the City by the defendants' allegedly negligent design or manufacture of firearms.
The 1998 suit would have violated Section 1799, if it had been in effect when the suit was filed. However, Section 1799 was not intended to regulate any aspect of the sale, purchase, possession, ownership, transfer, transportation, license or registration of firearms. Section 1799 was clearly a regulation of certain tort suits by limiting the persons and entities who can recover damages. The Act legislatively removed from local governments the right to file suit for damages caused by the negligent design and manufacture of firearms, while reserving to the state the right to sue for such damages.[1]
This new legislation that preempted local governments of their right of action to file certain types of tort suits was a policy decision to set limits and define the scope of liability in such actions, just as the legislative limitation of the right of action to certain persons in the recovery of wrongful death damages under La. Civ. Code art. 2315.1 was a policy decision. The policy decision in Section 1799 was perhaps designed to strike a balance in the filing of such actions, without which many questions regarding proper party plaintiffs may have arisen, but the policy decision to preempt the field clearly was not the exercise of police power to promote the general *22 public health, safety, welfare and morals or to protect and promote the vital interests of the people as a whole.

Effect on Pending Litigation
The issue in this suit is the effect of the Act 291 on pending litigation. In this respect, but for different reasons, I concur in the majority's result that Act 291 validly removed the City's right of action to recover this type of damages.
The majority reasoned that the Legislature intended Act 291 to apply to actions pending on the effective date; that a political subdivision of the state is not entitled to the protections of the Contracts and Due Process Clauses of the federal and state constitutions afforded to private citizens; that the City, as a home rule charter government existing at the time of the adoption of the 1974 Constitution, nevertheless, retained its existing powers, functions and duties under La. Const. art. VI, § 4 which may not be changed by state law unless necessary in the exercise of the state's police power;[2] and that Act 291 was a valid exercise of that police power.
I would not reach the police power issue because I disagree with the application in this case of La. Const. art. VI, § 4, as broadly interpreted in City of New Orleans v. Board of Commr's of Orleans Levee Dist., 93-0690 (La.7/5/94), 640 So.2d 237 (a decision in which I did not participate).[3] La. Const. art. VI, § 4 does not, in my view, universally prohibit the Louisiana Legislature from preempting the powers of local government except in the exercise of the state's police power.
The purpose of Article VI was best stated in R. Gordon Kean, Jr., Local Government and Home Rule, 21 Loy.L.Rev. 63, 66 (1975), as follows:
Municipalities and other local governmental units are, of course, an integral part of state government. "Home rule" does not mean complete autonomyit should be more properly viewed as a rule by which local government has the freedom and flexibility to manage its own local affairs without undue legislative interference. In matters of true state-wide concern and in matters of private or civil relationships, the state should be supreme. The "home rule" provisions of Article VI were designed with this in mind; therefore, these provisions do not go as far in granting home rule powers as some might have preferred. They do not place the substantive powers and functions of local government beyond legislative control through general law. Article VI does not create separate city-states; it does, however, afford the means by which a home rule charter unit may exercise any necessary power or function except as may be expressly limited by its charter and the general laws, or as may be inconsistent with other provisions of the Constitution. With regard to "structure and organization", the home rule charter unit is supreme, as it should be. Thus, the concept embodied in Article VI completely reversed the theory of local government as a "creature of the state" with only delegated authority. The old strict constructionist theory is also replaced by one which recognizes that so long as the Legislature does not deny a power, local government possesses it, *23 thereby rendering any further enabling legislation unnecessary. (emphasis added).
Article VI granted all local governments with home rule charters the right, without seeking legislative authority, to manage their own affairs in any manner which is not inconsistent with the Constitution or with the charter itself, and which is not limited by general law. Section 4 of Article VI specifically reserved to local governments with home rule charters adopted before the 1974 Constitution the right to retain their existing powers, functions and duties. The purpose of that provision, however, was to continue the substantive authority of such local governments, while according them the additional powers granted to other local governments under the 1974 Constitution. Kean at 67. That provision was not intended to guarantee to those local governments with preexisting charters that there would be no interference by the Legislature, particularly in matters of state-wide concern.
The broad right granted to the City of New Orleans by its Charter to "sue and defend, plead and be impleaded, in all courts and places ... in all matters and proceedings"did not give the City an unconditional right to sue for damages, arising from injuries to numerous citizens domiciled throughout the state, which were indirectly incurred by the City as well as by all other municipalities and parishes and by the state. In this type of action involving a matter or statewide concern and an interest shared with other local governments and the state, the state necessarily has the right to preempt political subdivisions as the proper party to bring such an action. Act 291 merely codifies this preemption (although it does not regulate firearms).
The Legislature had the inherent power, within constitutional limits, to determine which parties should have a right of action to sue for this type of damages and may preempt the power of local governments to file this type of action by reserving that right to the state. Accordingly, Act 291 (even if not an exercise of police power) validly preempted the City's powers and could do so with respect to pending suits, because the City does not enjoy the protections afforded to private citizens by the Due Process and Contracts Clauses of the federal and state constitutions.
NOTES
[1] Named as defendants in plaintiffs' original petition are: Smith & Wesson Corp., Sturm, Ruger & Co., Beretta U.S.A., Colt's Manufacturing Co., Glock, Inc., Taurus International Manufacturing, Inc., Sigarms, Inc., Lorcin Engineering Co., Inc., Bryco Arms, B.L. Jennings, Inc., Phoenix Arms, Davis Industries, Navegar, Inc., d/b/a Intratec, FMJ (a.k.a. "Full Metal Jacket"), Inc., Arms Technology, Inc., Cash America Pawn of New Orleans, Magic Money Pawn Shop, New Orleans Pawn Shop, Albert's Jewelry & Loan Pawn, Professional Sports Shop, Inc., American Shooting Sports Council, Inc., National Shooting Sports Foundation, Inc., and Sporting Arms and Ammunition Manufacturers' Institute, Inc. In an amended petition, plaintiffs added the following defendants: Tomkins, PLC, Fabbrica D'Armi Pietro Beretta, SPA, Glock, Gmbh, Forjas Tauras, SA, Swiss Industrial Group, Browning Arms Co., The Fabrique Nationale Group, Heckler and Koch, Inc., Heckler and Koch, Gmbh, British Aerospace Ltd., Para Ordnance, Magazine Pawn Shop, Pavenstedt & Pauli, and "one or more presently unidentified corporations doing business in the State of Louisiana which brokers or sells insurance to the defendants in this suit." Several of these defendants were dismissed from this suit by the trial court based on exceptions unrelated to the instant appeal.
[2] Section 1 of Act 291 of 1999 enacted La. R.S. 40:1797.1, which was redesignated as La. R.S. 40:1799 pursuant to the statutory revision authority of the Louisiana State Law Institute. La. R.S. 40:1799 provides:

A. The governing authority of any political subdivision or local or other governmental authority of the state is precluded and preempted from bringing suit to recover against any firearms or ammunition manufacturer, trade association, or dealer for damages for injury, death, or loss or to seek other injunctive relief resulting from or relating to the lawful design, manufacture, marketing, or sale of firearms or ammunition. The authority to bring such actions as may be authorized by law shall be reserved exclusively to the state.
B. This Section shall not prohibit the governing authority of a political subdivision or local or other governing authority of the state from bringing an action against a firearms or ammunition manufacturer, trade association, or dealer for breach of contract as to firearms or ammunition purchased by the political subdivision or local authority of the state.
[3] La. R.S. 9:2800.60, as enacted by Act 1299 of 1999, provides in its entirety:

A. The legislature finds and declares that the Louisiana Products Liability Act was not designed to impose liability on a manufacturer or seller for the improper use of a properly designed and manufactured product. The legislature further finds and declares that the manufacture and sale of firearms and ammunition by manufacturers and dealers, duly licensed by the appropriate federal and state authorities, is lawful activity and is not unreasonably dangerous.
B. No firearm manufacturer or seller shall be liable for any injury, damage, or death resulting from any shooting injury by any other person unless the claimant proves and shows that such injury, damage, or death was proximately caused by the unreasonably dangerous construction or composition of the product as provided in R.S. 9:2800.55.
C. Notwithstanding any other provision of law to the contrary, no manufacturer or seller of a firearm who has transferred that firearm in compliance with federal and state law shall incur any liability for any action of any person who uses a firearm in a manner which is unlawful, negligent, or otherwise inconsistent with the purposes for which it was intended.
D. The failure of a manufacturer or seller to insure that a firearm has a device which would: make the firearm useable only by the lawful owner or authorized user of the firearm; indicate to users that a cartridge is in the chamber of the firearm; or prevent the firearm from firing if the ammunition magazine is removed, shall not make the firearm unreasonably dangerous, unless such device is required by federal or state statute or regulation.
E. (1) For the purposes of this Chapter, the potential of a firearm to cause serious injury, damage, or death as a result of normal function does not constitute a firearm malfunction due to defect in design or manufacture.
(2) A firearm may not be deemed defective in design or manufacture on the basis of its potential to cause serious bodily injury, property damage, or death when discharged legally or illegally.
F. Notwithstanding any provision of law to the contrary, no manufacturer or seller of a firearm shall incur any liability for failing to warn users of the risk that:
(1) A firearm has the potential to cause serious bodily injury, property damage, or death when discharged legally or illegally.
(2) An unauthorized person could gain access to the firearm.
(3) A cartridge may be in the chamber of the firearm.
(4) The firearm is capable of being fired even with the ammunition magazine removed.
G. The provisions of this Section shall not apply to assault weapons manufactured in violation of 18 U.S.C. S.922(v).
[4] At the hearing, the trial court stated, "Just to keep the record clear, the Attorney General has been notified and has basically said he's not going to participate or appear." The Attorney General has not participated in the instant appeal.
[5] The design defects alleged by plaintiffs include the absence of a mechanism to: (1) prevent firearms from being fired by unauthorized users; (2) alert users that a bullet is in the firing chamber; and (3) prevent firearms from being fired when the ammunition magazine was removed from the firearm.
[6] Defendants allegedly failed to provide an adequate warning for the risks that: (1) minors could gain access to the firearm; (2) a round may be hidden in the chamber of a pistol; and (3) a pistol could be fired when the ammunition magazine is removed. Defendants also allegedly failed to advise consumers how to properly store weapons.
[7] La. Const. art. V, § 5(D) provides that a case shall be appealable to this court if "a law or ordinance has been declared unconstitutional."
[8] The Article 6 inquiry is at an end because we can determine the legislature's intent regarding retroactive application of the statute. As we explained in Bourgeois v. A.P. Green Indus., Inc., 00-1528 (La.4/3/01), 783 So.2d 1251, rendered this date, an analysis of whether the Act is substantive, procedural or interpretive would be futile since such a classification would be useful only in determining whether the legislature would have desired only prospective or both prospective and retroactive application of the statute. Because the clear language of Section 2 of the Act unmistakably evidences the legislature's intent that the provisions of La. R.S. 40:1799 be applied both prospectively and retroactively, there is no need to classify the law as substantive, procedural or interpretive.
[9] Because the City is not protected by the Contract Clauses found in both the Federal and State Constitutions, we need not utilize the four-step contract clause analysis to determine whether application of the statute at issue to the City's suit impairs its contractual obligations.
[10] Although the City is not to be regarded as a creature of the legislature since its powers and functions are granted directly by the constitution, Francis v. Morial, 455 So.2d 1168, 1173 (La.1984), it is undeniably a creature of the state.
[11] Defendants argue that La. R.S. 40:1796, a statute effective July 17, 1985, preempted the City's suit at the time it was filed and it was thus unnecessary for the district court to reach the constitutionality of Act 291. La. R.S. 40:1796 provides:

No governing authority of a political subdivision shall enact after July 15, 1985, any ordinance or regulation more restrictive than state law concerning in any way the sale, purchase, possession, ownership, transfer, transportation, license, or registration of firearms, ammunition, or components of firearms or ammunition; provided, however, that this Section shall not apply to the levy and collection of sales and use taxes, license fees and taxes and permit fees, nor shall it affect the authority of political subdivisions to prohibit the possession of a weapon or firearm in certain commercial establishments and public buildings.
Because neither the plain language nor anything in the legislative history of this statute leads us to conclude that it was intended to apply to lawsuits filed by the governing authority of a political subdivision, we find this contention without merit.
[1] Contrary to defendants' argument, a decision by this court in the present action finding negligence in the design or manufacture of certain firearms would apply uniformly throughout the state and would not vary from parish to parish, even though only one city brought this action.
[2] If this suit had been filed by a local government with a home rule charter adopted after 1974, the exercise of police power would not be an issue.
[3] That decision involved the issue of the power of the City of New Orleans to institute legislation restricting the zoning and use of land owned by the state. That decision did not involve the City's immunity from legislative control.